Breitel, J.
On February 19, 1970, petitioner, an otherwise uninvolved spectator at a pretrial hearing in the so-called Black Panther criminal prosecution in New York County (People v. Shakur, et al.), joined the audience in rising, when defendants entered the courtroom, and raised his arm in “ defiant salute ” while others shouted ‘ All power to the people. ’ ’ This followed a caution given to the audience by the presiding Justice immediately preceding the described occurrence: “ All right. I caution the audience again that I will not tolerate any misconduct from anyone attending the trial. We will have the defendants [in].” Petitioner was singled out by the Justice, brought before the bench, warned that the court was considering holding him in contempt and asked if he had anything to say. The response was “ I don’t recognize this Court as representing the people, and therefore I have no respect for this court, and I will say what I feel like saying, because this is what I believe in.”
The court then recited the facts as it had viewed them, substantially as stated above, and adjudged petitioner guilty of contempt of court. A short recess was taken to prepare the mandate, during which time counsel for petitioner appeared. Counsel argued on behalf of petitioner as did one of the attorneys for the defendants. It was suggested at one point that the rhetoric of a public speaker the previous evening had inspired the presence and conduct of many of the people, including petitioner, in the audience that- morning. No explanation or denial of fact on behalf of petitioner was offered, nor was there any apology or suggestion of contrition. The court adhered to its finding of criminal contempt and sentenced relator to 30 days in jail, which sentence has been served.
*237 The proceeding was a summary one for a criminal contempt committed in the immediate view and presence of the court under section 750 of the Judiciary Law. Petitioner sought review in the Appellate Division by this proceeding under CPLR article 78. That court confirmed the determination.
Section 750 provides:
“A. A court of record has power to punish for a criminal contempt, a person guilty of any of the following acts, and no others:
1. Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority.
# # #
3. Wilful disobedience to its lawful mandate.
# * # 9}
In appealing to this court as of right on constitutional grounds (CPLR 5601, subd. [b] par. 1), petitioner argues that his conduct did not constitute contempt as defined by the statute. He also urges that he was entitled to a further evidentiary hearing to determine his guilt and that it was a violation of his privilege against self incrimination to elicit from him the statement in which he told the court he had no respect for it and that he would say what he felt like saying. Finally, he contends that he was entitled to an adjournment as counsel requested and that another Judge should have determined the issue.
The arguments are specious and the judgment should be affirmed.
Disorder in courtrooms and the summary control of such disorder is not new. The applicable rules are ancient, going back to the common law, and there is little novelty to be discerned or devised (Matter of Barnes, 204 N. Y. 108, 113-114, covering judicial and legislative proceedings; see, also, Matter of Douglas v. Adel, 269 N. Y. 144, 146-147; Bloom v. Illinois, 391 U. S. 194, n. 2, at pp. 198-200). It is only the recent and frequent recurrence of courtroom disorder in so many places for protracted periods which makes the problem strikingly topical. Indeed, the conduct of petitioner took place well over a year ago during pretrial hearings followed shortly by the trial itself, and it is significant that the trial is still unfinished. Prior to the inci *238 dent in question, the hearings had been punctuated and delayed by allegedly disorderly efforts to disrupt the proceedings.
Petitioner’s conduct was a contempt. It is immaterial whether he shouted with the others. It is enough that by rising and raising Ms arm he joined the others in an unequivocal demonstration of disrespect designed only for that purpose and to interrupt the proceedings. The consciousness and purpose with which he acted, already implicit enough, were made explicit by his response to the court on being arraigned at the bench.
The arraignment at the bench and the query whether he had anytMng to say after being told what the presiding Justice had in mind was not an interrogation about past events, nor was it an interrogation by law enforcement officials in a custodial reference. It was the essential proffer in open court of an opportunity to a person, advised that he was in peril of being adjudged in contempt, to offer any reason in law or fact why that judgment should not be pronounced. Indeed, if the court had failed to do just that, the action taken would have been Mgh-handed if not wholly null, given the summary power that was being exercised.
It is the need for the preservation of the immediate order in the courtroom which justifies the summary procedure—one so summary that the right and need for an evidentiary hearing, counsel, opportunity for adjournment, reference to another Judge, and the like, are not allowable because it would be entirely frustrative of the maintenance of order. Of course, such rigorous procedure is justified only by necessity and must then be based upon contemptuous conduct committed in the view and presence of the presiding Justice. Thus it was said in Cooke v. United States (267 U. S. 517): “ To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court’s dignity and authority is necessary. It has always been so in the courts of the common law and the punishment imposed is due process - of law. Such a case had great consideration in the decision of this Court in Ex parte Terry, 128 U. S. 289. It was there *239 held that a court of the United States upon the commission of a contempt in open court might upon its own knowledge of the facts without further proof, without issue or trial, and without hearing an explanation of the motives of the offender, immediately proceed to determine whether the facts justified punishment and to inflict such punishment as was fitting under the law.” (at pp. 534-535). The court went further after observing that generally one charged with contempt was entitled to counsel, to defend, and to call witnesses, but that none of these rights pertained to a contempt committed in open court (id., p. 537; cf. Harris v. United States, 382 U. S. 162, involving a grand jury witness ’ refusal to testify without immediate threat or fact of offense to the court’s dignity or authority).
The cases have made quite clear that the power of the hearing or trial court to maintain order by immediate summary action, if immediate summary action is required, remains unimpaired, even in the grave instance of a criminal defendant entitled to the right of confrontation (Mayberry v. Pennsylvania, 39 U. S. Law Week 4133). More relaxed proceedings are suggested, including if appropriate, referral to another Judge for determination, if there is no immediate problem of order. From the court’s very action in delaying the imposition of sanctions until after the hearing or trial it may be inferred that there is no immediacy. Even then, as in the Mayberry case (supra), before reference to another Judge is indicated, the purported contempt must be of such a personal character as to indicate virtual impossibility of detached evaluation of the event. When the contempt, although disruptive, is not ‘1 an insulting attack upon the integrity of the judge ” there is no need for disqualification of the Judge (Ungar v. Sarafite, 376 U. S. 575, 584-585). Yet again, if immediacy is required, the fact that a personal attack is involved will not require referral. Thus, in the Mayberry case it was said: “ Generalizations are difficult. Instant treatment of contempt where lawyers are involved may greatly prejudice their clients but it may be the only wise course where others are involved. Moreover, we do not say that the more vicious the attack on the judge the less qualified he is to act. A judge cannot be driven out of a case. Where, however, he does not act the instant the contempt is committed, but waits until the end of the trial, on balance, it is generally *240 wise where the marks of the unseemly conduct have left personal stings to ask a fellow judge to take his place ” (39 U. S. Law Week, at p. 4136).
Petitioner misconceives his status in the courtroom. Defendants in criminal cases and their lawyers who have committed allegedly contemptuous acts in the courtroom present special difficulties, simply because the imposition and the timing of sanctions may have such serious effects upon the determination of the merits of the cases. Not so in the case of the uninvolved spectator, not even in his case as much as in that of the witness. It is essential to the public trial that there be access to spectators, but any particular spectator is quite dispensable, as are all the spectators if disorderly. What is essential is that spectators not be allowed or encouraged to inject themselves into the trial process, or to spawn time-consuming or distracting collateral proceedings to determine their responsibility for disorder in the courtroom.
In this case the presiding Justice was eminently patient, fair, and forebearing, albeit stern. Summary sanction was the only indicated remedy for the kind of interruption involved. Petitioner participated in a collateral demonstration serving 'only the purpose of disrespect, disobedience, and disruption. There was not the slightest semblance or color of offering by a party, counsel, or witness of fact or argument on the merits of any litigable issue before the court. Of all species of conduct involving courtroom disorder this is the kind with the least social value or justification, and none whatever for political demonstration.
The court is not a public hall for the expression of views, nor is it a political arena or a street. It is a place for trial of defined issues in accordance with law and rules of evidence, with standards of demeanor for court, jurors, parties, witnesses and counsel. All others are absolutely silent nonactors with the right only to use their eyes and ears. Any disorder in the courtroom, and especially that of spectators, can only be explained if the purpose is to destroy or impair the court’s function. No society may tolerate such conduct so purposed unless it has lost both the will and the right to survive.
Nor are there alternatives to summary action except at the expense of fulfilling the frustration intended. Alternatives *241 requiring pyramided collateral proceedings and delays would be worse than the contempts. In this context, it is particularly important to keep in mind that future sanctions may prove to be of little deterrence to violent or disruptive demonstrators while present sanctions provide either instant deterrence or eliminate the opportunity for disruption. The key of course is the motivation which produced the disruptions. Some disrupters are more interested in achieving disruption than they fear anticipated sanctions. For them, it is no effective sanction to place them in jail after the trial. It may even add luster to the posttrial celebration by zealots.
On this view, no constitutional or other right of petitioner was violated procedurally. On the merits, his own words to the court demonstrated the fact and purpose of disruptive, disrespectful contempt. Indeed, his statement that he would say what he wished suggests that he even participated in the shouting although the respondent Justice out of meticulousness never made such a finding because he could not say that he had heard petitioner use his voice.
Accordingly, the judgment should be affirmed.
Chief Judge Fuld and Judges Burke, Scileppi, Bergan. Jasen and Gibson concur.
Judgment affirmed, without costs.