IN THE MATTER OF: JEROME PAUL

No. 7510SC855

(Filed 3 March 1976)

1. **Contempt of Court § 2— direct contempt — post-trial adjudication — notice and hearing**

    Before an attorney may be finally adjudicated in contempt and sentenced after trial for conduct during the trial, he must be given reasonable notice of the specific charges and an opportunity to be heard in his own behalf.

2. **Contempt of Court § 2— attorney's remarks during trial — post-trial adjudication — notice and hearing**

    The due process requirements of notice and an opportunity to be heard were adequately met before an attorney, at the conclusion of a trial, was found by the trial judge to be in direct contempt of court for remarks which the attorney had made during the course of jury selection where, on the day following the remarks, the trial judge gave the attorney a written transcript of the remarks for which the attorney was being cited for contempt, the trial judge thereafter advised the attorney that immediately upon the return of a jury verdict in the trial the attorney would be cited for contempt for such remarks and that the judge would permit and hear a statement by the attorney in open court relating to such remarks, and the attorney was permitted to make a statement in open court before the judge adjudicated him to be in contempt.

3. **Contempt of Court § 2; Judges § 5— attorney's remarks during trial — post-trial contempt hearing — failure of trial judge to recuse himself**

    The trial judge did not err in failing to disqualify himself from post-trial contempt proceedings against an attorney for remarks made by the attorney during the trial where the record shows that the trial judge did not react strongly to the attorney's remarks, that there were no "marked personal feelings" or "personal stings" on behalf of the trial judge, and that there was not such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused.

4. **Contempt of Court § 2— attorney's remarks during jury selection — direct contempt**

    Remarks made by an attorney during jury selection in a murder trial were properly found by the trial judge to constitute direct contempt of court.

5. **Contempt of Court §§ 2, 4— contempt statutes — constitutionality**

    The statute enumerating contempts, G.S. 5-1(1), and the statute providing for summary punishment for direct contempt, G.S. 5-5, are not unconstitutionally vague and do not violate due process.

ON *writ of certiorari* to review order entered by *Hobgood, Judge.* Order entered 15 August 1975 in Superior Court, WAKE County. Heard in the Court of Appeals 11 February 1976.

At the conclusion of a murder trial over which he presided, Judge Hamilton Hobgood found petitioner, a lawyer, to be in direct contempt of court for remarks which petitioner had made earlier during the course of jury selection. The court entered judgment and made findings of fact as follows:

"The Court finds as a fact that during the first day of trial . . . on the 14th day of July, 1975, the Court directed Mr. Jerry Paul, Chief Counsel for the defendant, . . . to sit down three times before the said Paul did so after a ruling of the court to which the said Jerry Paul was vocally objecting. The court then admonished the said Jerry Paul that when a court ruled it was a ruling of the court and further statements of counsel critical of the ruling were not in order.

The Court further finds as a fact that on the following day, July 15, 1975 at 2:55 o'clock p.m. when the court was hearing defense counsel, Jerry Paul, in the absence of the prospective juror Jenny Lancaster, in reference to the court's ruling on certain questions propounded to said juror by defense Jerry Paul. On that occasion Jerry Paul in a very loud voice stated that the court's rulings were denying the defendant an opportunity to effectively pick good jurors and to return to the method the court was suggesting was to return to a hundred years ago and made absolutely no sense whatsoever, at which time the court denied the defense counsel the right to ask certain questions in the manner put by defense counsel to which Jerry Paul answered in a very loud voice that any questions the state asked, they were allowed to ask, and the questions he wanted to ask were not being allowed to ask and that the court was showing bias in favor of the State and was not giving to the defense a fair trial. Thereafter, a conversation occurred between the court and the defendant as to the method of asking questions during which time defense counsel, Jerry Paul, stated that the State was taking longer to examine jurors than the defense was taking.

The Court further finds as a fact that this statement as to time consumed by the State was not true at which

time Jerry Paul answered that the reason the court was cutting him off was because the defendant was getting an advantage and the court was favoring the State and the court was proceeding in a manner to ensure . . . [defendant's] conviction.

The Court further finds as a fact that the records amply disclose that this was not a true statement at which time the defense counsel, Jerry Paul, in a voice indicating loud anger asked the court to recluse [sic] himself because he didn't think that the court was capable of giving . . . [defendant] a fair trial and he didn't intend to sit or stand there and see an innocent person go to jail for any reason and that the court could threaten him with contempt or anything else but it did not worry him, at which time Attorney Jerry Paul instantly turned his back to the court and in a loud voice addressed the News Media and others in the courtroom and said 'and to sit there and say like the queen of hearts off with the heads, the law is the law, is to take us back one hundred years,' whereupon Attorney Jerry Paul then turned back to the court and said that he intended to ask the questions and said in a loud voice 'it is apparent I'm disgusted with the whole matter, whole matter of ever bringing . . . [the defendant] to trial anyway.' Thereafter he made further statements and at the completion of these statements the court inquired if he was through he stated 'I am through for the moment but not through for this trial.'

The Court finds as a fact that the statements made by the said Attorney Jerry Paul on said occasion were in manner made to disrupt the trial and in an apparent attempt to force the court at that time to find him in contempt of court in order that a mistrial would result.

The Court concludes from the above findings of fact that the above acts of Jerry Paul as set forth in these Findings of Fact are in direct contempt of this court.

The Court further concludes that in order to keep this trial in progress which was necessary in the ends of justice, this Order was delayed until the . . . [defendant's] trial had been completed.

Now, therefore, it is ordered, adjudged and decreed that the said Attorney Jerry Paul is in direct contempt of

court and he is hereby ordered in punishment therefor to be confined in the common jail of Wake County for a period of fourteen days.

This the 15th day of August, 1975 and 12:10 p.m. o'clock."

On 20 August 1975, a Writ of Certiorari was issued by this Court to review the contempt order and judgment of imprisonment, and petitioner was released pending review by this Court.

*Attorney General Edmisten, by Senior Deputy Attorney General Andrew A. Vanore, Jr., and Associate Attorney Joan Byers.*

*Paul, Keenan, Rowan and Galloway, by James E. Keenan, James V. Rowan and Karen Bethea Galloway, for defendant appellant.*

*District Attorney Burley B. Mitchell, Jr., Tenth Prosecutorial District, Kyle S. Hall, Assistant District Attorney and Joyce A. Hamilton, Assistant District Attorney, for amicus curiae.*

ARNOLD, Judge.

[1] The U. S. Supreme Court held in *Taylor v. Hayes,* 418 U.S. 488, 41 L.Ed. 2d 897, 94 S.Ct. 2697 (1974), that due process safeguards must be extended to persons cited for direct contempt of court in cases where final adjudication and sentencing for the contemptuous conduct is delayed until after trial.

"We are not concerned here with the trial judge's power, for the purpose of maintaining order in the courtroom, to punish summarily and without notice or hearing contemptuous conduct committed in his presence and observed by him. [Citation omitted.] The usual justification of necessity [citation omitted] is not nearly so cogent when final adjudication and sentence are postponed until after trial. Our decisions establish that summary punishment need not always be imposed during trial if it is to be permitted at all. In proper circumstances, particularly where the offender is a lawyer representing a client on trial, it may be postponed, until the conclusion of the proceedings. [Citation omitted.]. . . .

On the other hand, where conviction and punishment are delayed, 'it is much more difficult to argue that action without

**In re Paul**

notice or hearing of any kind is necessary to preserve order and enable [the court] to proceed with its business.' . . . Groppi [*Groppi v. Leslie,* 404 U.S. 496, 30 L.Ed. 2d 632, 92 S.Ct. 582 (1972)] counsels that before an attorney is finally adjudicated in contempt and sentenced after trial for conduct during trial, he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf. This is not to say, however, that a full scale trial is appropriate." *Taylor v. Hayes, supra,* at 497-499.

[2]   One of the questions presented by this appeal is whether the due process requirements of (1) reasonable notice and (2) an opportunity to be heard were provided to petitioner. From the record the following facts appear to be pertinent to this issue:

(1) The findings of contempt resulted from an incident which occurred on July 15, 1975, during the jury selection.

(2) The petitioner was given a verbatim transcript on 16 July 1975 of the previous day's incident from which the finding of contempt resulted. This transcript was given the petitioner in open court and findings of fact were made by the presiding judge that the incident took place at 2:55 p.m. on July 15, and stated ". . . this is called instance number one in reference to Mr. Paul and I am now handing him a record, verbatim record from the transcript of just what you said yesterday."

(3) On 21 July 1975, Judge Hobgood advised petitioner in chambers that immediately upon return of a jury verdict in the murder trial the petitioner would be cited for contempt for his statements in court on 15 July 1975.

(4) On 12 August 1975, Judge Hobgood explicitly advised petitioner in chambers that the court would permit and hear a statement by petitioner in open court relating to his actions on 15 July 1975.

(5) On 15 August 1975, petitioner was given an opportunity to be heard, and he made the following statement:

"MR. PAUL: I would sort of respond to your Honor, if I might. If your Honor pleases, even though I tried cases before you before, I didn't get to know you too good.

In re Paul

THE COURT: We got to know each other better in this trial.

MR. PAUL: Better in this trial. And I hope that both of us and all of us have grown more than—more as human beings and understanding each other. Realize we have had disagreements. I hope that out of those disagreements have come growth as human beings that lead us towards understanding in reaching what is the truth.

Myself, I'm what you call an advocate or believer of nonviolence and basically of Dr. King's philosophy, as most of the people on the defense team are. And it is with this philosophy we proceed through life. This philosophy we speak out at people when we think they are wrong, but we do not do so because we just dislike them, dislike them out of hatred; do not do so to make them—to belittle them or to hurt them in any way; we do so only in order to call attention to particular issues of dialogue in a trial like this.

I, myself, your Honor, am very emotionally involved and feel very strongly about this young lady. And I would do—would give up a great deal for her, because as Dr. Flynn so aptly put it, you—he—you could not have rode back that night with her and believed that she was anything but innocent.

And your Honor, I've spent a long time in this State fighting for social change and sometimes I do become emotional and outspoken, heated. And that heat is not hatred, and that heat is not spoken in anger or to belittle or to hurt any one else. Sometimes it is necessary that we speak out knowing that others will become angry at us, so that through anger that will cause a dialogue or a thought process and will perhaps result in growth.

And if it is necessary for a person, who lives under Dr. King's philosophy, to call upon themselves punishment or harshness because of speaking out, then they know what they're doing, that; and they accept that gladly, but they at no time hate or despise or dislike the other person or the person they were talking to. And they also hope that out of that grows the dialogue which results in a better understanding.

---

**In re Paul**

---

I realize that your Honor and I have had words back and forth, and I hope that depth of nonviolence, that out of that has grown a better understanding of each other's position and that you realize that words were not said in an attempt to belittle or an attempt to harm you in any way, but maybe you can—maybe you cannot understand my life style of nonviolence. I hope that you can and hope that we made progress on that, but I know that we have talked about that and think that we now understand each other a little better. And certainly can say that for my part that I have come to appreciate your good qualities better than I did, because I know of them because of that incident. I cannot speak for you.

THE COURT: Well, I'll say to you I like you and I think you are a good lawyer. That's for publication."

The due process requirements of notice and opportunity to be heard were adequately met. Petitioner received actual notice, including the time and place, that he would be cited for contempt. A written transcript provided formal notice of the specific actions for which petitioner was being cited.

Moreover, petitioner was given advance notice that he would have an opportunity to be heard, and in fact he was heard. The U. S. Supreme Court said in *Taylor v. Hayes, supra* at 499, that "the contemnor might at least urge, for example, that the behavior at issue was not contempt but the acceptable conduct of an attorney representing his client; or, he might present matters in mitigation or otherwise attempt to make amends with the court." This is essentially the nature of the argument petitioner undertook to make to the court.

[3]   Petitioner's next argument is that he was entitled to have an unbiased judge rule on the contempt charge, and that it was error for the trial judge not to recuse himself. We see no merit in this argument.

In *Taylor v. Hayes, supra,* it was found that the trial judge became embroiled in a running controversy with petitioner and displayed an unfavorable personal attitude toward petitioner, his ability, and his motives. It was held that the contempt issue should have been decided by a different judge.

However, we see the instant case as being more like that of *Ungar v. Sarafite,* 376 U.S. 575, 11 L.Ed. 2d 921, 84 S.Ct.

---

**In re Paul**

---

841 (1964), cited in the *Taylor* case wherein the court stated, "but we were impressed there with the fact that the judge 'did not purport to proceed summarily during or at the conclusion of the trial, but gave notice and afforded an opportunity for a hearing which was conducted dispassionately and with a decorum befitting a judicial proceeding.' " *Taylor v. Hayes, supra,* at 503.

That Judge Hobgood did not react strongly to petitioner's conduct emerges clearly in the following statements which the Judge made at the conclusion of the trial and prior to sentencing petitioner:

"I have to say about counsel, I think highly of all of them. I think that the counsel has fought the case with intensity; State's counsel and defense counsel. Mr. Paul and myself will probably have some more matters to take care of because—well, we will discuss that later. But Mr. Paul is a very good lawyer and a very intense lawyer. He fights very hard and intensely for his client.

This is not the first time I've had Mr. Paul right in this same courtroom before on previous occasions.

Incidentally, you won the case."

After finding petitioner in contempt and passing sentence the following conversation occurred:

"THE COURT: You understand nothing personal between you and me, don't you?

MR. PAUL: Yes, sir. And if saying things in order to make advances in courts and society and create social change, and if doing what I did resulted in . . . [defendant] going free or any way contributed to that, then I do not consider time as any dishonor but as a badge of honor and note Dr. King said we turn jail walls into jails of freedom.

THE COURT: All right. Thank you very much. Now, Mr. Paul realizes and I hope the News Media realizes that this is nothing personal between me as individual and Mr. Paul because I personally have no animosity towards him whatsoever. This is a matter that I felt necessary in order to preserve the court decorum and I would have held him in contempt at that moment except we could not have tried the case. . . ."

Finally, as has already been quoted, following petitioner's statement Judge Hobgood stated, "Well, I'll say to you I like you and I think you are a good lawyer. That's for publication."

From our reading of the record before us it is clear that there were no "marked personal feelings" or "personal stings" on behalf of the trial judge, nor was there "such a likelihood of bias or an appearance of bias that the judge was unable to hold the balance between vindicating the interests of the court and the interests of the accused." *Ungar v. Sarafite, supra,* at 588; *Mayberry v. Pennsylvania,* 400 U.S. 455, 27 L.Ed. 2d 532, 91 S.Ct. 499 (1971).

We conclude that there was no error in the failure of the trial judge to recuse himself.

[4] Petitioner admits that his remarks were "certainly contentious and persistent" but maintains that they were not contemptuous. He asserts that his comments were invited by the trial judge, and furthermore that he was within the scope of vigorous advocacy and not interrupting court proceedings or disobeying any court directive. We disagree.

The record shows that petitioner went beyond the bounds of an attorney's vigorous advocacy on behalf of his client. Due to the forbearance and self-control of the trial judge there was only a minimal interruption of the trial proceedings caused by petitioner's actions. However, the conduct of the petitioner would have greatly obstructed the court in the performance of its duties had it not been for the judge's self-restraint.

As an attorney, petitioner knew, or should have known, not to persist in making arguments after the court made its rulings. Moreover, the findings of fact by the trial judge show that petitioner had been specifically forewarned that further statements by counsel were not in order after the court made its rulings.

There is no evidence in the record to support petitioner's position that the court invited his remarks. Nor is there anything in the record to indicate that the judge badgered or provoked petitioner in any manner that would have prompted petitioner's actions.

That petitioner knew his remarks were contemptuous is reflected by his statement that it would not worry him to be held in contempt. By his words and demeanor it is shown that

petitioner intended to be contemptuous, and the record supports the finding that his acts and conduct did amount to contempt.

[5]   We have considered petitioner's final arguments that G.S. 5-1(1) is unconstitutional in that it is vague and denies him due process, and that G.S. 5-5 is unconstitutional on its face and violates due process of law. His arguments are not persuasive. See *State v. Little*, 175 N.C. 743, 94 S.E. 680 (1917) (as to G.S. 5-1(1)), and *In re Williams*, 269 N.C. 68, 152 S.E. 2d 317 (1967) (as to G.S. 5-5).

The "standards of proper courtroom decorum are not altered and should not be applied differently because a trial may be characterized as political. . . ." *United States v. Seale*, 461 F. 2d 345, 367 (1972). "The court is not a public hall for the expression of views, nor is it a political arena or a street. It is a place for trial of defined issues in accordance with law and rules of evidence, with standards of demeanor for court, jurors, parties, witnesses and counsel." Matter of *Katz v. Murtagh*, 28 N.Y. 2d 234, 240, 321 N.Y.S. 2d 104, 269 N.E. 2d 816 (1971).

The order of contempt and judgment of confinement is affirmed. Having served approximately five of the fourteen day sentence petitioner must now serve the remaining nine days of the sentence. Execution for confinement of the contemnor for the remainder of the term of imprisonment pronounced by Judge Hobgood shall issue at the next session of Superior Court for Wake County following the certification of this opinion.

Affirmed.

Chief Judge BROCK and Judge PARKER concur.