■ THE PEOPLE OF THE STATE OF NEW YORK, Plaintiff, v DARRYL JETER, Defendant. RICHARD FOARD, III, Appellant; THADDEUS E. OWENS, as Justice of the Supreme Court, Kings County, Respondent.—Appeal from an order of the Supreme Court, Kings County (Owens, J.), dated May 23, 1985, which summarily adjudged appellant in criminal contempt of court.

Order reversed, on the law, without costs or disbursements, and the sentence imposed thereon vacated, without prejudice to a renewal of a proper contempt proceeding before a Justice other than the respondent Justice.

In September 1984, a New York City Transit Police Officer, Irma Lozada, was slain, and defendant Darryl Jeter was

charged with the crime. On May 22, 1985, following selection of the jury in the underlying criminal trial of *People v Jeter,* the respondent Justice, who was presiding over the trial, addressed the prosecutor, Mr. Seidel, and defendant's counsel, Richard Foard, III, the appellant herein, outside the presence of the jury, as follows:

"Mr. Seidel and Mr. Foard, I was shown an article in the paper where somebody related to the press about the slain cop having traces of cocaine in her system. I don't know which one of you did it, but let me make you a promise, if I find either one of you going near the press—you better treat the press as if the press has leprosy—not only will I hold you in contempt pursuant to the judicial *[sic]* law, I will hold a hearing and hold you in contempt pursuant to the criminal statute. Do you understand that?

"This case is not going to be tried in the newspapers, do you understand that? If you say good morning to the press or good afternoon to the press and I hear about it and see it, I am going to hold you in contempt, and not only that, I am going to recommend to the Bar Association that they take disciplinary action against you.

"No case here is going to be tried in the press. I don't want you speaking anything to the press, do you understand that?" Appellant answered "I understand what you are saying, Your Honor". Following a short colloquy, the respondent Justice noted, "By the way, Mr. Seidel and Mr. Foard, I mentioned press, that also covers radio and television".

Later that day, in response to interviews given by police officers and members of the Patrolmen's Benevolent Association to the print and electronic media, appellant allowed himself to be interviewed by members of the print and electronic media. Videotapes of these interviews given by appellant were aired on television that night and were seen by the respondent Justice while he was watching television at home that evening.

At the resumption of the trial the following day, the respondent Justice held the appellant in summary contempt based on the appellant's violation of the directive issued the day before. Specifically, the respondent Justice stated on the record as follows:

"THE COURT * * * Mr. Foard, would you please rise? I told you yesterday morning that you were not to talk to the news media and last night I saw * * * Mr. Foard as big as life talking to them * * *

"THE COURT * * * Mr. Foard, I told you what I was going to do. I hold you in summary contempt. You're fined two hundred and fifty dollars or thirty days in jail, and an additional thirty days in jail. I will stay the execution of sentence until the case is completed. I expect you to surrender yourself and be incarcerated for thirty days. If you don't pay your fine, you'll do another thirty days."

An order was thereafter entered which reads in relevant part as follows: "That the said RICHARD W. FOARD, III., ESQ. acted in a contemptuous and insolent manner during a session of the court, and in its immediate view and presence with intent to defy the dignity and authority of the court did go on television after having been admonished by the Court; and told not to make statements to the media concerning issues now being heard by a jury in the Matter of People v Darryl Seter [sic], did appear on Channels 5 and 4 in defiance of said court order on 5/22/85."

In adjudging appellant to be in contempt of court the respondent Justice invoked the summary contempt procedures contained in Judiciary Law § 755. That statute states in pertinent part: "Where the offense is committed in the immediate view and presence of the court, or of the judge or referee, upon a trial or hearing, it may be punished summarily".

Also relevant here is that part of Judiciary Law § 751 (1) which provides that: "§ 751. Punishment for criminal contempts * * * contempt, committed in the immediate view and presence of the court, may be punished summarily". We now reverse on the ground that the court improperly invoked the summary contempt procedures of Judiciary Law § 755 to punish conduct committed outside of "the immediate view and presence of the court".

The purpose of the summary contempt power has been clearly set forth by both our Court of Appeals and the United States Supreme Court. In *Matter of Katz v Murtagh* (28 NY2d 234, 238), the Court of Appeals stated: "It is the need for the preservation of the immediate order in the courtroom which justifies the summary procedure—one so summary that the right and need for an evidentiary hearing, counsel, opportunity for adjournment, reference to another Judge, and the like, are not allowable because it would be entirely frustrative of the maintenance of order. Of course, such rigorous procedure is justified only by necessity and must then be based upon contemptuous conduct committed in the view and presence of the presiding Justice".

The United States Supreme Court stated in *Cooke v United States* (267 US 517, 534): "To preserve order in the court room for the proper conduct of business, the court must act instantly to suppress disturbance or violence or physical obstruction or disrespect to the court when occurring in open court. There is no need of evidence or assistance of counsel before punishment, because the court has seen the offense. Such summary vindication of the court's dignity and authority is necessary".

In the case at bar, the appellant's interviews with the print and electronic media clearly were not "in the immediate view and presence of the court". Indeed, the respondent Justice apparently was not even aware of appellant's conduct until he watched a videotape thereof at home. Accordingly, the summary contempt order must be reversed, and the sentence imposed thereon vacated *(see, Sassower v Signorelli,* 65 AD2d 756; *Matter of Heathcock,* 696 F2d 1362). However, since it appears that appellant may have willfully disobeyed the lawful mandate of the court *(see,* Judiciary Law § 750 [A] [3]; *State of New York v Congress of Racial Equality,* 92 AD2d 815), the reversal herein is without prejudice to a renewal of the contempt proceeding pursuant to proper procedural safeguards *(see,* Judiciary Law § 751 [1]; 22 NYCRR 701.3, 701.5; *Matter of Douglas v Adel,* 269 NY 144, 147). Mangano, J. P., Rubin, Eiber and Kooper, JJ., concur.