*544 OPINION OF THE COURT
Bellacosa, J.
The appeal, here by this Court’s grant of leave to petitioner, is from a judgment of the Appellate Division dismissing as moot the proceeding seeking to review a summary criminal contempt adjudication. We conclude that petitioner is entitled to her day in court on the merits and, therefore, reverse.
The facts alleged in the petition verified by petitioner and the underlying transcript of the contempt proceeding attached to the petition as an exhibit present petitioner’s case. She is a 20-year-old black woman who attended Supreme Court in Rochester as a spectator at a friend’s criminal calendar call. She was seated with two companions in the back of the courtroom when a female court officer approached and asked them why they were present. They explained they were waiting for a friend’s case to be called and identified it by name. The officer walked away and, after an undetermined amount of time, petitioner, while talking with her companions, used the epithet "white bitch” — that was the basis of her being found in criminal contempt of the court. The remark was overheard by an Assistant District Attorney, who then left his place and spoke to the female court officer who, in turn, reported something to the Judge at the Bench. The Judge interrupted his calendar call to inquire:
"the court: Deputy, I would like to know the name of the lady in the blue.
"the court deputy: Please stand and give the Court your name.
"ms. williams: Sandy Williams.
"the court deputy: Sandy Williams, your Honor.
"the court: Miss Williams, I am going to ask you to remain. I have several other matters. Then we have a matter to address.”
*545 At the conclusion of the calendar call, the Judge summoned Ms. Williams alone to the Bench, her companions having been excused and the courtroom doors locked. As far as the record shows from the exhibit attached to the petition, the entire colloquy of what transpired between petitioner and respondent is as follows:
"the court: State your name again, please.
"ms. williams: Sandy Williams.
"the court: Miss Williams, how old are you?
"ms. williams: Twenty.
"the court: I believe that you committed a criminal contempt in the presence of the Court by calling my court officer a 'white bitch5. You have the right to speak. Do you wish to say anything?
"ms. williams: He [the Assistant District Attorney] didn’t hear me call her one. He just heard me say 'the white b-i-t-c-h’ [the letters were spelled out but the word not uttered].
"the court: Whom were you referring to?
"ms. williams: I wasn’t talking to him. I was talking to my friends.
"the court: Was there any other white female around you? "ms. williams: She had already left for the hall.
"the court: I advise you, Miss Williams, that I do consider that a contempt of this Court in the presence of the Court. I do hereby impose a summary contempt on you. Is there anything you would like to say?
"ms. williams: No.
"the court: I hereby sentence you to the Monroe County Jail for five days.
"ms. williams: Five days?
"the court: Five days. Be seated in the jury box.”
The Judge committed Ms. Williams to the Monroe County Jail to start serving the sentence immediately. Three days later she was released.
Petitioner timely commenced this CPLR article 78 proceeding to review the Judge’s action against her. On the respondent Judge’s motion, the Appellate Division dismissed the proceeding for mootness. We reinstate the petition and remit the case, the respondent having expressly asked for the chance to answer on the merits if the mootness motion failed (CPLR 7804 [fp.
*546 A court has the summary power to punish contemptuous behavior which takes place "in its immediate view and presence, and directly tend[s] to interrupt its proceedings” (Judiciary Law § 750 [A] [1]). The power is extraordinary, because it authorizes the Judge to act as prosecutor, jury and Judge at once, and to impose incarcerative sanctions without affording an alleged contemnor the right to an evidentiary hearing, the right to counsel, or the opportunity for adjournment to prepare a defense. This unique authority has historically been justified, based on the urgency of the situation, as a necessary tool to preserve the immediate order in a courtroom (Matter of Katz v Murtagh, 28 NY2d 234, 238).
The prescribed article 78 challenge to review such judicial action is not rendered moot merely because the sentence has been served, as it is the only method of review (Judiciary Law § 752). Inasmuch as lasting consequences potentially flow from the adjudication, the proceeding remains ripe for judicial review (Sibron v New York, 392 US 40; Matter of Katz v Murtagh, supra, at 236; see also, Lindsay v New York State Bd. of Parole, 48 NY2d 883).
In this case, petitioner served three days of the five-day sentence immediately. That did not eradicate the official public rebuke, a continuing blot on her record and reputation. The Judge’s action against her, if not subjected to scrutiny and correction, if warranted, would remain a matter of permanent record, at least with the court, the county jail, the prosecutor’s office, and the local Sheriff’s Department. Unless she is given the opportunity to vacate the adjudication by the only judicial review afforded to her, she may be required in honesty and in law to disclose her incarceration and conviction on future job applications and applications for school, as well as any license or permit applications. The adjudication could no doubt be used to attack her credibility as a witness or party in a court of law. Also, if she were ever charged with a crime, this matter could reemerge as a pall, for example, on bail, plea or sentencing aspects of such a case.
Strong policy reasons exist, also, for holding such review of contempt proceedings not moot. For were we to conclude otherwise and agree to dismiss the article 78 proceeding on the procedural bar, we would thus insulate from merits review the exercise of one of the most powerful and extraordinary judicial weapons. The contempt power is surely necessary but so, too, is the objective, distanced review of its invocation (see, *547 Sibron v New York, 392 US, supra at 52-53). By allowing CPLR article 78 review in this case, where it appears especially vital to the protection of petitioner’s basic rights and to the validation of the process itself, we do not diminish the potency of the tool or the necessity for its availability and proper exercise.
Respondent should have the opportunity to answer petitioner’s argument that the summary contempt adjudication should be vacated because her conduct did not constitute criminal contempt under Judiciary Law § 750 (A) (1). Her argument rests on allegations and her copy of the contempt proceeding transcript which, if they constitute the true and complete record and if proven, show that the conduct did not take place in the court’s "immediate view and presence”. Petitioner emphasizes in her petition that the Judge did not hear the alleged epithet, and that she answered his demand for an explanation by not even repeating the word but spelling out its letters. There is nothing in the record, prepared solely from petitioner’s side at this pleadings stage, showing that the Assistant District Attorney and the court officer were sworn and gave any statement as to what actually lead up to the contempt adjudication or what was said between themselves and to the Judge. Clearly, Judiciary Law § 750 (A) (1) requires more than is presently available and presented (see, Johnson v Mississippi, 403 US 212, 215; Matter of Douglas v Adel, 269 NY 144, 146-147; see also, Sedler, The Summary Contempt Power and the Constitution: The View From Without and Within, 51 NYU L Rev 34, 43).
Respondent, of course, must be given his full procedural entitlements, including the opportunity to answer on the merits.
Accordingly, the judgment of the Appellate Division should be reversed, with costs, and respondent’s motion to dismiss denied.
Chief Judge Wachtler and Judges Simons, Kaye, Alexander, Titone and Hancock, Jr., concur.
Judgment reversed, etc.