OPINION OF THE COURT
Raymond E. Cornelius, J.
This proceeding was commenced, pursuant to Judiciary Law § 755 and CPLR 7805, for the purpose of reviewing a summary contempt order issued against the petitioner by the respondent, a Family Court Judge of the County of Monroe. The order was issued on April 25, 1997, and directed that the petitioner be sentenced to 30 days in the Monroe County Jail, together with payment of a fine in the amount of $1,000. This court, by order dated May 7, 1997, directed the respondent to show cause why the summary contempt order should not be annulled, and stayed execution of the penalty pending resolution of these proceedings. The order to show cause was initially made returnable on May 12, 1997, and prior thereto, the Attorney-General, on behalf of the respondent, submitted a motion to dismiss upon objections in point of law. One of the objections related to the alleged failure to obtain personal jurisdiction over the respondent because of the manner of service. Oral argument on the underlying petition and motion to dismiss was adjourned until May 19, 1997. On that date, the court issued another order to show cause, returnable May 27, 1997, which was properly served upon the respondent, and, therefore, the issue of personal jurisdiction has become moot.
This case now becomes the latest in a long series of litigation involving the obscure and somewhat archaic provisions of *112 article 19 of the Judiciary Law. This statute, which covers the law of contempts, has become a proverbial landmine for members of the judiciary. Initially, one seeming contradiction is the fact that this proceeding, which involves a Family Court Judge, must be decided by this court, whereas a contempt order, issued by a County Court Judge or Supreme Court Justice, would be required to be initiated in the Appellate Division. (CPLR 506 [b] [1]; also see, Matter of Nolan v Lungen, 61 NY2d 788 [1984]; Matter of Juracka v Severson, 115 AD2d 102 [3d Dept 1985], lv denied 67 NY2d 603 [1986]; Matter of Panas v Traficanti, 147 AD2d 795 [3d Dept 1989]; Matter of Muka v Livingston, 113 AD2d 963 [3d Dept 1985]; Matter of People v Quigley, 59 AD2d 825 [4th Dept 1977]; Matter of Berkman v Family Ct., 146 Misc 2d 733 [1990].) Accordingly, this court will attempt to set forth the requisite guidelines for summary contempt within the context of the facts of the pending case.
The petitioner is a graduate of Harvard Law School, and is admitted to the practice of law in the State of New York. However, the matter for which he appeared in the Monroe County Family Court was based upon petitions filed against him, personally, involving two children and for the most part, he appeared in that court pro se. The initial proceeding was commenced in October 1996, based upon a petition, filed by the mother, requesting a determination of paternity for one of the children and an order of custody. Later, the litigation included issues involving family offense allegations, as well as child support. On February 28, 1997, Mr. O’Connell appeared before the respondent Family Court Judge, and after some colloquy, admitted that he had consumed alcoholic beverages on that day. The respondent stated that, in her opinion, Mr. O’Connell could not participate in any hearing on this appearance and she would decline to take any admission from him. Accordingly, there was an adjournment of the scheduled hearing, and Mr. O’Connell was given the following admonition: "If you come to Court on the next occasion and you’ve taken a drug or an alcoholic drink, you will be in contempt of Court. We’ll have a hearing, and probably, you’ll go to jail. I will also have you arrested for public intoxication under Section 240 of the Penal Law. Do you understand that, Mr. O’Connell?”
A subsequent hearing was conducted on April 25, 1997. There was some preliminary discussion concerning the fact that the petitioner had missed a previous court date, and also had met, in the courthouse, with his two daughters. This had been done with the permission of their mother and other par *113 ties, but in violation of an order of protection.[1] The transcript discloses, early in the proceedings, the following verbal exchange between the court and petitioner:
"the court: Well, I have information that you have taken not only cocaine today, but alcohol; is that true?
"respondent Robert o’connell: Your Honor, am I on trial here?
"the court: Well, I told you on one prior occasion that if you came to court and you were under the influence or had taken anything before you came to court, that you’d be arrested. And I have information, and it’s hearsay, but that person is here and can give me the information, that people have seen you ingest drugs today.
"So you didn’t say yes; you didn’t say no. If you don’t answer the question, I assume — I have to assume it’s true.”
The petitioner then persisted in declining to make any admission concerning the intake of drugs or alcohol. A lengthy colloquy, primarily between the court and petitioner, then followed concerning the issue of custody of the two children. At the conclusion thereof, the court made a directive concerning custody, and also continued the order of protection, subject to an evaluation of the petitioner for substance abuse and completion of any recommended treatment. The respondent then addressed a person by the name of Norma Jean Robinson, who has been described as a "housekeeper/secretary” for the petitioner. The transcript discloses the following:
"the court: — is this: Miss Robinson, would you mind standing.
"Miss Robinson, I understand you gave some people information that you had personal knowledge of Mr. O’Connell having drugs and alcohol today; is that true?
"norma jean robinson: Yes.
"the court: Would you swear to me under oath if that is true?
*114 "norma jean robinson: Yes, ma’am.
"the court: What did he take? How do you know?
"norma jean robinson: Well, I was at the house this morning.
"the court: And what happened?
"norma jean robinson: Well, I saw Bob. He had alcohol, drank some beer. I saw that. I don’t know what it was on the tray, but I think it was powder, cocaine.
"the court: What did he do with it?
"norma jean robinson: (Indicating.) He sniffed it.
"the court: He sniffed it?
"norma jean robinson: Yes.
"the court: Now, Mr. O’Connell, you have acted in an irrational manner and behaved in an unusual manner today.
"The person who lives in your home has told me what I need to hear, and I find you in contempt of Court.
"I warned you on prior occasions, if you came to Court and if you ingestsed [sic] drugs and alcohol, I would find you in contempt.
"I am sentencing you to thirty days in jail and fining you one thousand dollars. That’s the basis of my ruling.”
In addition to the foregoing, the respondent issued a written contempt order dated April 25, 1997. This order, in relevant part, recites that Mr. O’Connell was found in contempt of court pursuant to Judiciary Law § 750 (A) (1), and sentenced in accordance with Judiciary Law § 751 (1), based upon his "disorderly, contemptuous, and insolent behavior * * * committed during a proceeding before this Court, in the Court’s immediate view and presence, and directly tending to impair the respect due to the Court’s authority”. The behavior is described as follows:
"During preliminary discussions prior to the hearing, Respondent, who is himself a licensed attorney, and was appearing pro se, was acting in an erratic, irrational and aggressive manner. The Court heard sworn testimony from respondent’s housekeeper/secretary that she had witnessed respondent ingesting alcohol and cocaine just prior to appearing in Court. Respondent had previously appeared before this Court under the influence of alcohol, by his own admission, and had been admonished, on the record, that if he appeared in Court in such a condition in the future he would be found to be in contempt.” The Family Court Judge also signed an order of *115 commitment, which directed that the petitioner, herein, be sentenced to jail for a period of 30 days, but which was otherwise silent as to the specific acts constituting the contempt.
Generally, there are two forms of contempt — criminal (Judiciary Law § 750) and civil (Judiciary Law § 753). Although the primary purpose of criminal contempt is to preserve a court’s authority, as compared to protecting against prejudice to rights of a party in a civil contempt, there may be circumstances where the same act could constitute both forms of contempt, such as the disobedience of a lawful mandate of the court. (See, e.g., Judiciary Law § 750 [A] [3]; § 753 [A] [1].) Unlike criminal contempt, the procedure for a civil contempt proceeding is set forth in some detail in the Judiciary Law. (See, Judiciary Law §§753, 756.) Nevertheless, the statute does generally require that a person charged with criminal contempt be notified of the accusation and be afforded a reasonable time to make a defense. (Judiciary Law § 751 [1].) The one exception to this rule involves punishment for summary contempt, which is committed within the "immediate view and presence” of the court. (Judiciary Law § 751 [1].) The authority for imposing summary, criminal contempt, is found in Judiciary Law § 750 (A) (1), which reads as follows:
"A court of record has power to punish for a criminal contempt, a person guilty of any of the following acts, and no others:
"1. Disorderly, contemptuous, or insolent behavior, committed during its sitting, in its immediate view and presence, and directly tending to interrupt its proceedings, or to impair the respect due to its authority.”
The circumstances under which a court may impose summary contempt have been specifically set forth by court rule in the First and Second Departments and are generally described as "exceptional and necessitous”. (Rules of App Div, 1st Dept [22 NYCRR] § 604.2 [a] [1]; Rules of App Div, 2d Dept [22 NYCRR] § 701.2 [a].) These rules appear to have been adopted by case law in the Third Department. (See, Matter of Doyle v Aison, 216 AD2d 634 [3d Dept 1995], lv denied 87 NY2d 807 [1996].) Furthermore, these rules impose certain procedural requirements upon a court before someone may be held in summary contempt. These include warnings or admonishments, the opportunity to desist, and the opportunity to make a statement in their defense or in extenuation of their conduct. (22 NYCRR 604.2 [a] [3]; 701.2 [c]; 701.4.) Many of the reported *116 decisions from the First and Second Departments focus upon compliance with these requirements. (See, e.g., Matter of Spain v Braatz, 217 AD2d 661 [2d Dept 1995], lv denied 87 NY2d 802 [1995]; Matter of Werlin v Goldberg, 129 AD2d 334 [2d Dept 1987], lv denied 70 NY2d 615 [1988]; Matter of Mangiatordi v Hyman, 106 AD2d 576 [2d Dept 1984], appeal dismissed 64 NY2d 1040.) Indeed, the failure to adhere to these procedural requirements has served as a basis, in part, at least, for a determination of discipline against a Judge. (See, Matter of Sharpe, NY State Commn on Jud Conduct, Ann Report, at 134 [Mar. 1984].)
In the pending case, the petitioner was not afforded a right to a hearing, an attorney, or an adjournment, but these are not requirements upon a summary contempt adjudication. (Matter of Katz v Murtagh, 28 NY2d 234 [1971].) However, because the case arises in the Fourth Department, the respondent was not bound by the procedural rules of the First and Second Departments, and, therefore, not required to give warnings to the petitioner nor grant him an opportunity to desist from the conduct, which may have been the subject of the contempt. Nevertheless, before the imposition of summary contempt, a contemner, in the State of New York, must be accorded an opportunity to make a statement. (Mattter of Rodriguez v Feinberg, 40 NY2d 994 [1976]; Matter of Katz v Murtagh, supra.) Of course, a Judge must be careful in the language utilized to extend this right to a contemner, because this may be misinterpreted as an attempt to elicit an admission. (See, Matter of Katz v Murtagh, supra.) In any event, the record, in the pending case, is devoid of any opportunity afforded to the petitioner to make any such statement before he was found in contempt and ordered to pay a fine and be confined to jail for a period of 30 days.
Another fatal error, which appears on the record, is the fact that the respondent delayed the summary contempt adjudication until the conclusion of the hearing. This may be viewed as a somewhat technical or procedural issue, but in reality, relates to the very essence of the reason for summary contempt powers being vested in the courts. The purpose is to prevent the disruption or threatened disruption of the courtroom, and a delay in the adjudication of contempt and imposition of sanctions indicates that there is no immediate need for summary contempt in the first instance. (See, Matter of Doyle v Aison, supra; Matter of Breitbart v Galligan, 135 AD2d 323 [1st Dept 1988].) For example, the verbal abuse of a *117 Judge, including an accusation that he was a " 'disgrace to the bench’ ”, was held to be disruptive to a calendar call, and, therefore, properly the subject of a summary contempt order. (Matter of Kunstler v Galligan, 168 AD2d 146, 148 [1st Dept 1991], affd 79 NY2d 775 [1991].) In this type of situation, where a summary contempt adjudication occurs during a trial or other proceeding, rather than at the conclusion thereof, there is no requirement for a hearing. (Matter of Werlin v Goldberg, supra; Matter of Mangiatordi v Hyman, supra.)
In the pending matter, a hearing was conducted at the close of the proceedings, during which the petitioner’s "housekeeper/ secretary” answered certain questions posed by the court. Counsel for the petitioner first contends that the court’s query to Norma Jean Robinson — "Would you swear to me under oath if that is true?” — is insufficient to constitute an oath under CPLR 2309 (b). This section provides that "An oath or affirmation shall be administered in a form calculated to awaken the conscience and impress the mind of the person taking it in accordance with his religious or ethical beliefs.” (CPLR 2309 [b].) There is no established form of an oath, although it has been noted that "[t]he ceremony should be 'solemn * * * an unequivocal act of assent to tell the truth.’ ” (Siegel, NY Prac § 388, at 584 [2d ed], citing Second Prelim Report of Advisory Comm on Practice and Procedure, 1958 NY Legis Doc No. 13, at 204.) This court holds that reference to a divine being (e.g., "So help you God”), or alternatively, an affirmation in lieu of an oath based upon religious reasons, is not necessary, and a statement to the same effect as made by the respondent Judge in open court would be sufficient to meet the criteria of CPLR 2309 (b). However, notwithstanding that an oath was administered to Ms. Robinson, Mr. O’Connell was not accorded the right to cross-examine or otherwise participate during the testimony. Furthermore, and perhaps more significant, in this court’s opinion, the holding of a hearing, although generally required before imposition of a criminal contempt, pursuant to Judiciary Law § 751 (1), would be inconsistent with an adjudication of summary contempt under section 750 (A) (1).
In the seminal case of Matter of Douglas v Adel (269 NY 144, 146-147 [1935]), the Court, after reviewing the inherent power of courts to punish someone summarily for contempt of court, under common law and statute, stated as follows:
"A criminal contempt in the 'immediate view and presence’ of the court may be punished summarily if the acts constituting such contempt are seen or heard by the presiding judge so *118 that he can assert of his own knowledge the facts constituting the contempt in the mandate of commitment. In that case, no proof need be given. The knowledge of the judge takes the place of proof and his recital in the mandate of commitment of the facts upon which the adjudication of contempt is based is sufficient. (People ex rel. Barnes v. Court of Sessions, 147 N. Y. 290; Judiciary Law, § 755.)
"If, however, the acts constituting the contempt are not committed within his hearing or he does not see them and is, therefore, unable to so state in the mandate of commitment, it is necessary that the offender be given an opportunity to be heard after notice. (Judiciary Law, § 751; People ex rel. Choate v. Barrett, 56 Hun, 351; affd., 121 N. Y. 678.)
"In the first case, the judge acts upon his own knowledge to vindicate the dignity of the court. In the other, he acts upon proof submitted after an opportunity has been given the offender to answer.”
In the present case, the Attorney-General, on behalf of the respondent, argues that the violation of the previous order, directing Mr. O’Connell not to appear at a hearing, after having consumed alcoholic beverages or taken drugs, did occur within the "immediate view and presence” of respondent. There are applicable decisions in which an adjudication of summary contempt has been upheld where the contemner violates a lawful directive of the court, but most involve situations where the order and violation are part of the same proceeding, and occur without interruption. (See, e.g., Matter of Kunstler v Galligan, supra; also see, Matter of Brostoff v Berkman, 79 NY2d 938 [1992]; Matter of LaDuca v Bergin, 86 AD2d 983 [4th Dept 1982]; People v Sanders, 58 AD2d 525 [1st Dept 1977].) Conversely, violation of a court order, made at a prior time, and which requires testimony to establish the violation, does not occur within the "immediate view and presence” of the court. (Sassower v Signorelli, 65 AD2d 756 [2d Dept 1978].) This court, therefore, holds that disobedience of a lawful mandate of the court, which may constitute a criminal contempt under Judiciary Law § 750 (A) (3), or a civil contempt under section 753 (A) (1), may also constitute a summary contempt under Judiciary Law § 750 (A) (1), but only if the mandate and disobedience occur before the Judge, as a part of the same proceeding, without interruption. If a hearing is required to determine whether or not a contemner has violated an order previously issued by the court, such procedure would be inconsistent with the concept of a summary contempt.
*119 Counsel for both parties have cited and also relied upon the decision of Matter of Williams v Cornelius (76 NY2d 542 [1990]) which involved the undersigned. In this case, a courtroom spectator had been held in summary contempt for a provocative remark made to a court officer, which occurred during the course of a calendar call and was then reported to the Judge at the Bench. The case, for which the spectator was present, involved a defendant, who was a member of the "G-Boys”, a well-known youth gang, and whose bail had been revoked because of witness intimidation. A proceeding under CPLR article 78 was dismissed, as moot, by the Appellate Division. However, the Court of Appeals reversed this determination, reinstated the petition and remitted the case to permit the respondent to answer the petition on the merits. After discussing the mootness issue, Judge Bellacosa, writing for the Court, stated that petitioner had emphasized "in her petition that the Judge did not hear the alleged epithet” and if her transcript was correct, "the conduct did not take place in the court’s 'immediate view and presence’ ” (at 547). The decision then contained the following statement: "There is nothing in the record, prepared solely from petitioner’s side at this pleadings stage, showing that the Assistant District Attorney and the court officer were sworn and gave any statement as to what actually led up to the contempt adjudication or what was said between themselves and to the Judge.” (Supra.) The obvious question is what difference it would make whether or not the witnesses were sworn and their statements recorded, if the petitioner’s conduct had not occurred in the "immediate view and presence” of the court because the Judge did not personally overhear her remark. Presumably, in relying upon this language, the Attorney-General, on behalf of the respondent, emphasizes that Norma Jean Robinson was sworn, and the transcript records her statements to the court.
First, it should be noted that the above-quoted language from Matter of Williams v Cornelius (supra) is perhaps dictum because the case was actually decided on the basis of the mootness issue, and by necessity, remanded to accord the respondent "his full procedural entitlements, including the opportunity to answer on the merits” (at 547).[2] It should also be recognized that conduct which is not subject to summary *120 contempt powers may, nevertheless, form the basis for some other form of contempt adjudication, such as some "disturbance, directly tending to interrupt its [court’s] proceedings.” (See, Judiciary Law § 750 [A] [2].) In any event, this court has concluded and holds that the words "immediate view and presence”, as contained in Judiciary Law § 750 (A) (1), must be interpreted to encompass conduct within the actual knowledge of the court, without the necessity of taking testimony or conducting a hearing. Otherwise stated, if a hearing is required in order for the court to ascertain the conduct, notwithstanding that it may have occurred inside the courtroom, and in the presence of the Judge, it could not form the basis for a summary contempt adjudication.
Finally, the adjudication of summary contempt should be annulled and set aside because of the failure to comply with the provisions of Judiciary Law § 752. This statute requires that the mandate of commitment contain the "particular circumstances” of the offense constituting any form of criminal contempt. (Judiciary Law § 752.) Similarly, Judiciary Law § 755 provides that, in the case of a summary contempt, an order must be issued by the court, "stating the facts which constitute the offense and which bring the case within the provisions of this section, and plainly and specifically prescribing the punishment to be inflicted therefor.” Both the mandate of commitment, under section 752, and an order under section 755 are reviewable only by a proceeding, pursuant to CPLR article 78.
As already discussed, the mandate of commitment in the pending case failed to contain any facts or circumstances of Mr. O’Connell’s conduct which may have constituted the basis for a finding of summary contempt. Historically, the requirement pertaining to mandates of commitment, as set forth in section 752, may have been premised upon the need to provide a record of the proceedings. (See, People ex rel. Barnes v Court of Sessions, 147 NY 290 [1895].) Although proceedings are now stenographically or electronically recorded, and notwithstanding the fact that clerical personnel frequently prepare the mandates of commitment, failure to comply with this section will result in the commitment being considered defective. (See, e.g., Matter of Foster v Morgenthau, 115 AD2d 375 [1st Dept 1985], appeal dismissed 67 NY2d 828 [1986]; Matter of Sickmen v Goldstein, 59 AD2d 731 [2d Dept 1977].)
*121 The respondent did issue a signed order, and this court would certainly not require that the particular circumstances of the offense be set forth in the mandate of commitment, issued pursuant to Judiciary Law § 752, if properly included in an order issued under section 755. (See, People ex rel. Barnes v Court of Sessions, supra; Matter of Berkon v Mahoney, 180 Misc 659 [1943], revd on other grounds 268 App Div 825 [1944], affd 294 NY 828 [1945].) The order, in part, describes Mr. O’Connell as "acting in an erratic, irrational and aggressive manner”. The description of petitioner’s conduct is conclusory in nature, and, furthermore, cannot necessarily be equated with "[disorderly, contemptuous, or insolent behavior”, which is the sine qua non of conduct subject of summary contempt. (Judiciary Law § 750 [A] [1].) As a minimum, the conduct of petitioner would be required to be described in a manner to meet such standard. (See, Matter of Rotwein [Goodman], 291 NY 116 [1943]; Matter of Boasberg v Munson, 286 App Div 951 [4th Dept 1955].) Furthermore, assuming that the petitioner acted in an "insolent, discourteous and contemptuous manner”, such characterization may be insufficient without the precise manifestations being set forth in the order. (See, People ex rel. Bernstein v La Fetra, 171 App Div 269 [1st Dept 1916].)
Extensive affidavits, verified by respondent, have been submitted in response to the petition. These affidavits seek to amplify the alleged contemptuous behavior of the petitioner. For example, he is described as "rude”, "argumentative”, "disheveled”, "insolent”, "loud and boisterous”, "jittery”, "insulting and down right disrespectful”, and "rambling”. However, a summary contempt is only reviewable by a certiorari proceeding, which is now embodied in CPLR article 78. The review is therefore limited to the declaration of facts contained in the mandate of commitment and/or contempt order, and again, this requires more than a mere conclusion. (Matter of Waldman v Churchill, 262 NY 247 [1933].) The failure to set forth the particular conduct which formed the basis for the contempt, in either the mandate of commitment or order, deprives this court of the ability to review such determination in a proceeding under CPLR article 78.
The signed order also makes reference to the testimony of Ms. Robinson, and the failure of Mr. O’Connell to comply with the court’s previous order. This may serve as a basis for a criminal and/or civil contempt on the basis of failure to adhere to a lawful mandate, but, for reasons already discussed, cannot serve as a basis for a summary contempt committed in *122 the "immediate view and presence” of the court if extrinsic evidence is required to establish the violation.
Based upon the foregoing reasons, it is hereby ordered that the order of contempt, under Judiciary Law § 750 (A) (1), together with the mandate of commitment is hereby annulled, set aside and vacated, without prejudice, to commence a proceeding under section 750 (A) (3) and/or section 753 (A) (1).

. The parties had consented to this meeting because the petitioner had apparently not seen his 14-year-old daughter since on or before December 19, 1996. On that date, this child became the subject of a nationwide search when she absconded with a 22-year-old Air Force deserter, whom she had met through the Internet. After appearances on national television shows by the mother, the couple was located in Marion, Illinois, in April and the child was thereafter returned to her home in Rochester, New York. The airman was subsequently sentenced to four years’ imprisonment by a military court on rape and sodomy charges, and reportedly received a bad conduct discharge from the military.

. Following remand to the Appellate Division, the undersigned issued an order, sua sponte, which vacated, annulled and set aside the mandate of commitment because it did not comply with the requirements of Judiciary Law § 752. Thereafter, upon concession that the mandate of commitment was *120 legally insufficient, the Appellate Division vacated the judgment of contempt on the merits. Accordingly, there were no further proceedings or hearing.