IN THE MATTER OF:       )
MATHIAS P. HUNOVAL,     )       ORDER
ATTORNEY AT LAW         )

THE facts giving rise to this order are not in dispute. They were found at an inquiry conducted at the Court's request by the NEW HANOVER Superior Court, *Robert D. Rouse, Jr., Judge* Presiding, on 31 May 1977 and Mr. Hunoval has agreed in writing to their accuracy. They are as follows:

1. One Larry Bernard was tried at the October 1974 Session of New Hanover Superior Court and convicted at that trial of rape, kidnapping, felonious larceny of an automobile, and armed robbery. He was sentenced to death in the rape case and terms of imprisonment were imposed in the remaining cases. He was represented at trial by Jay D. Hockenbury and Mathias P. Hunoval, both of whom were appointed by the court for that purpose.

2. The cases were appealed to the Supreme Court of North Carolina. By order entered 3 October 1974 Mathias P. Hunoval was appointed to perfect and argue the appeal. The appeal was argued by Mr. Hunoval at the Court's Fall Term 1975. The Court found no error in the trial in an opinion filed 7 October 1975 and reported at 288 N.C. 321. Bernard's execution was scheduled for 24 October 1975.

3. On 15 October 1975 Mr. Hunoval on behalf of his client petitioned this Court in writing for a stay of execution on the ground that: "The appellant intends to file a timely petition for writ of certiorari in the Supreme Court of the United States to seek review of his judgment and sentence." In response to this petition the Chief Justice of this Court on 20 October 1975 after reciting that "the defendant through his attorney, having stated his intention to file a petition for writ of certiorari in the United States Supreme Court," ordered that execution of the sentence be stayed.

4. By letter dated 3 December 1975 addressed to the Chief Justice, Mr. Hunoval requested that he be permitted to withdraw as counsel for Bernard. The letter stated that he was dissatisfied with the fee allowed him in prosecuting the appeal. The letter further stated:

"I am not an eleemosynary institution.

. . . .

"Unless an Order is entered by some judicial official in the State of North Carolina to compensate me, on a reasonable basis, for services to be rendered in perfecting Bernard's appeal to the United States Supreme Court, I cannot justify working for nothing or at a rate less than that received by a garage mechanic."

5. Mr. Bert M. Montague, Director of the Administrative Office of the Courts, replied to Mr. Hunoval's request on 15 December 1975 as follows:

"The Chief Justice has received your unusual letter and, after reviewing it with members of the Court, has directed me to respond. The Court regrets your disappointment at the amount of fee allowed. However, the members of the Court are of the opinion that the trial judge's award was quite adequate under all the circumstances. Investigation revealed that a considerable portion of the time you charged was expended because the case had to be returned to you for your failure to comply with the rules. It also appears that when you returned it you filed it in the Court of Appeals. As the Chief Justice has stated in the past, lawyers must be compensated on the basis of a reasonable time for the particular case.

"Your letter contained a request that you be permitted to withdraw as counsel in this case. The Chief Justice has instructed me to advise you that under no circumstances will you be relieved pending the filing of the petition for certiorari to the United States Supreme Court. You sought and were granted a stay of execution in the case upon the condition that you would file the petition for certiorari. In view of the uncertainty about the death penalty pending the decision in the *Fowler* case, the Court feels that counsel in each such case has the duty to file the petition for writ of certiorari to the United States Supreme Court in order to stay execution pending the decision in the *Fowler* case. The Court anticipates that this should and will be done irrespective of

compensation, and it has observed that all other lawyers in similar cases have cheerfully complied.

"If you have not previously filed a petition for certiorari with the United States Supreme Court, you might want to contact Mr. Sidney Eagles in the Attorney General's office. He has worked with a number of other lawyers in similar circumstances and I am sure he will be happy to provide you with a form adequate for the occasion.

"You indicate concern about receiving reasonable compensation from the State of North Carolina for services to be rendered in perfecting the appeal to the United States Supreme Court. We are concerned at present with the petition only, and there is no assurance that you will be prosecuting an appeal. If the petition is granted and you actually perfect the appeal, you will be looking to the Federal court for compensation because the North Carolina General Assembly has not authorized the payment of counsel for representation in the Federal courts."

6. Although Mr. Hunoval prepared a petition for certiorari and a supporting brief to be filed in the Supreme Court of the United States, he never, in fact, filed the petition. He was removed from the case as counsel by Judge Rouse on 19 May 1977 and other counsel was appointed to represent Bernard.

7. Mr. Hunoval refused to file the petition for certiorari in the Supreme Court of the United States on behalf of his client because he understood he would not be compensated for this service.

THIS COURT IS OF THE OPINION THAT:

1. It is the duty of an attorney to represent his client "zealously within the bounds of the law." Canon 7, North Carolina State Bar Code of Professional Responsibility, 283 N.C. 783, 824. (Hereinafter State Bar Code.)

2. Mr. Hunoval had a duty to both his client and this Court to file in the United States Supreme Court an application for writ of certiorari. This duty arises from the facts

that: (a) Mr. Hunoval's client was subject to being executed by virtue of a sentence of death imposed by the trial court and in the imposition of which this Court found no legal or constitutional error; (b) the United States Supreme Court at the time of this Court's ruling had before it for consideration the question of whether the North Carolina law by which Mr. Hunoval's client was sentenced to death was constitutional; (c) Mr. Hunoval obtained a stay of execution of the death sentence from the Chief Justice of this Court upon his representation that an application to the United States Supreme Court for a writ of certiorari to review our decision would be made; (d) Mr. Hunoval then requested and was denied leave to withdraw as counsel in the case; and (e) this Court suggested that Mr. Hunoval proceed to file the application.

3. That there was no provision for Mr. Hunoval to be compensated for filing the application for the writ in no way relieved him of the duty to file it, nor does it mitigate his failure to perform this duty. "[A]n attorney appointed by the court to defend cannot recover compensation from the public for his services in the absence of an enabling statute. The reason is that an attorney, being an officer of the Court . . . takes his office *cum onere,* and one of the burdens of office which custom has recognized is the gratuitous service rendered to a poor person at the suggestion of the court." *State v. Davis,* 270 N.C. 1, 11, 153 S.E. 2d 749, 756 (1967), *cert. denied,* 389 U.S. 828 (1970), quoting 7 Am. Jur. 2d, Attorneys at Law, § 207; *see generally,* Annot., "Right of Attorney Appointed by Court for Indigent Accused to, and Court's Power to Award, Compensation by Public, in Absence of Statute or Court Rule," 21 A.L.R. 3d 819 (1968). "The rendition of free legal services to those unable to pay reasonable fees continues to be an obligation of each lawyer . . . ." State Bar Code, *supra* at 793.

4. Mr. Hunoval's refusal to file the application for writ of certiorari constitutes:

　　a. Dereliction of a clear duty owed to his client and, under the circumstances, this Court;

　　b. Unprofessional conduct;

c. Misconduct; and

d. Malpractice.

5. This Court has not only the inherent power but also the duty to discipline attorneys, who are officers of the court, for unprofessional conduct. Canon 3B(3), N.C. Code of Judicial Conduct, 283 N.C. 771, 773. Unprofessional conduct subject to this power and duty includes "misconduct, malpractice, or deficiency in character," *State ex rel. Attorney General v. Herman Woodward Winburn, Attorney*, 206 N.C. 923, 925, 175 S.E. 498, 500 (1934), and "any dereliction of duty except mere negligence or mismanagement." *In re Burton*, 257 N.C. 534, 542, 126 S.E. 2d 581, 587 (1962).

6. Judicial disciplinary action may take the form of an order of disbarment or suspension for a time of the attorney's privilege to practice law. *In re Burton, supra; State ex rel. Attorney General v. Winburn, supra.*

7. Summary judicial disciplinary action is appropriate when the attorney's dereliction occurs in a matter then pending before the court and where the facts underlying the dereliction are not in dispute. *In re Brittain*, 214 N.C. 95, 197 S.E. 705 (1938); *State v. Spivey*, 213 N.C. 45, 195 S.E. 1 (1938); *see also, In re Bonding Co.*, 16 N.C. App. 272, 192 S.E. 2d 33, *appeal dismissed*, 282 N.C. 426, 192 S.E. 2d 837 (1972).

8. Mr. Hunoval's dereliction occurred in a matter pending before this Court and the underlying facts constituting the dereliction are not in dispute and have, indeed, been admitted in writing by him.

NOW, THEREFORE, WE ORDER:

1. That the privilege of Mr. Hunoval to practice law in the Appellate Division of the North Carolina General Court of Justice be and it is hereby suspended for a period of twelve (12) months from the date of this order. Pursuant to this suspension neither the Court of Appeals nor this Court shall permit Mr. Hunoval to prosecute any appeal in which the notice of appeal is entered at a trial which begins after Mr. Hunoval has been duly notified of the terms of this order and before the expiration of twelve (12) months from the

date hereof. Mr. Hunoval may, however, continue to prosecute and appear in any appeal in which notice of appeal to the Appellate Division was given at a trial which began before he was so duly notified.

2. That the privilege of Mr. Hunoval to represent by court appointment indigent criminal defendants in the Trial Divisions of the North Carolina General Court of Justice be and it is hereby suspended for a period of twelve (12) months from the date of this order. Pursuant to this suspension no judicial officer of the General Court of Justice shall appoint Mr. Hunoval to represent any indigent criminal defendant after being duly notified of the terms of this order and before the expiration of the period of suspension, nor shall Mr. Hunoval accept any such appointment after he has been duly notified of the terms of this order and before the expiration of the period of suspension. Mr. Hunoval may, however, continue to appear in any case in which the order of appointment was entered at a time when neither the judicial officer nor Mr. Hunoval had been so duly notified.

Done by the Court in Conference this the 26 day of July, 1977.

James G. Exum, Jr.
Associate Justice
For the Court