IN THE MATTER OF: JEROME PAUL, ATTORNEY

No. 8610SC95

(Filed 3 March 1987)

1. **Contempt of Court § 6.2— criminal contempt—soliciting another to disrupt trial—sufficiency of evidence**

    Evidence was sufficient to support the trial judge's finding that respondent attorney solicited a third person to disrupt the trial of his client, thereby committing willful behavior during the sitting of a court which tended to interrupt its proceedings in violation of N.C.G.S. § 5A-11(a).

2. **Contempt of Court § 5.1— soliciting another to disrupt trial—sufficiency of notice in show cause order**

    Although the State introduced evidence tending to show that respondent attorney and his friend conspired to solicit a third person to interrupt court, respondent was not found guilty of this conduct but was instead found guilty of soliciting the third person himself, and the show cause order was clearly sufficient to give respondent notice of the conduct alleged to be contemptuous.

3. **Contempt of Court § 6.1— public statements by lawyer—admissibility in contempt hearing**

    In a proceeding to show cause why respondent should not be held in contempt and disbarred for his alleged solicitation of disruptive behavior in open court during a criminal trial in which he represented the defendant, the trial court did not err in admitting evidence that respondent violated a court order by making certain public statements, since the evidence was relevant to show respondent's motive and intent to make the public aware of his belief that the prosecution of his client was racially motivated, even if to do so would violate a court order; furthermore, in a trial before a judge without a jury it is presumed that the judge disregarded any incompetent evidence. N.C.G.S. 8C-1, Rule 404(b).

4. **Contempt of Court § 6.1— attorney's public statements—consideration in determining motive or intent**

    The trial judge properly considered the evidence of respondent's statements made during a rally in Virginia to raise money for his client as relevant only to the issue of motive or intent and did not base his finding of contempt on this evidence in violation of N.C.G.S. § 5A-11(b) or respondent's constitutional rights.

5. **Attorneys at Law § 12— attorney's solicitation of person to disrupt criminal trial—contempt conviction—disbarment proper**

    Where respondent was convicted of contempt for soliciting someone to disrupt a criminal trial in which he, respondent, represented the defendant, such conduct clearly amounted to misconduct or a dereliction of duty other than mere negligence or mismanagement so that the order of the trial court disbarring respondent was a proper exercise of its inherent authority to

discipline attorneys and was necessary to protect the court and the public from an unworthy practitioner.

**6. Attorneys at Law § 12— disbarment—no reliance on lawyer's statements at public rally**

There was no merit to respondent's contention that the judgment of disbarment must be reversed because the trial court improperly relied upon evidence of respondent's statements made at a rally to raise money for his client in a criminal case, because the trial court penalized him for exercising his First Amendment rights, and because the show cause order did not notify him that he could be disbarred for such conduct, since the trial judge did not make any findings of fact in the judgment of disbarment relating to this conduct, and respondent was not disbarred for making public statements at the rally, as he contended.

APPEAL by respondent from *Stephens, Judge.* Judgments entered 9 August 1985 in Superior Court, WAKE County. Heard in the Court of Appeals 25 August 1986.

On 24 July 1985, respondent Paul was ordered to show cause why he should not be held in contempt and disbarred for his alleged solicitation of disruptive behavior in open court during a criminal trial in which he represented the defendant. At the hearing, the State introduced evidence tending to show the following: During the trial of *State v. Percy Robert Moorman*, Angelo Barnes, a friend of respondent Paul, who was seated in the first row behind the defense table, stood up in open court after the trial judge had sustained an objection to a question asked by respondent Paul and stated, "Judge please give this man a chance to represent his client. You acting like a D.A." The trial judge had Barnes removed from the courtroom and found him in contempt. Following his conviction in that trial, Moorman hired George Rogister, Jr., to represent him in a motion for a new trial. Prior to the hearing on the motion, Moorman and his mother, Dorothy Moorman, told Rogister that respondent Paul had planned with Angelo Barnes to interrupt the trial in the manner described above. Moorman testified at the hearing in the present case that on the morning of the incident, respondent Paul and Barnes discussed a "protest" of the case in the car on the way to the court and that during the discussion respondent Paul told Barnes to "pick an appropriate time to protest." Dorothy Moorman testified that Golden Frinks, a friend of respondent Paul, told her prior to Barnes' outburst in court "what was going to happen."

Respondent Paul denied that he solicited Barnes to disrupt the trial and testified that he had advised Barnes against the plan. Barnes corroborated respondent Paul's testimony and testified that the protest was his idea. Mark McGill testified that he drove respondent Paul to court the day of the incident and Barnes was not in the car with them.

At the close of the evidence, the trial court made the following findings of fact:

> The Court specifically finds beyond a reasonable doubt that Attorney Jerome Paul did solicit, encourage and cause Angelo Barnes to stand up in open court during the trial of STATE v. PERCY MOORMAN on 18 February 1985 in the Superior Court of Wake County for the purpose of interrupting the trial and protesting the rulings of the presiding Judge. Attorney Paul acted intentionally, knowing that this conduct of Angelo Barnes would constitute willful behavior tending to disrupt and interrupt the Court proceedings constituting criminal contempt in violation of G.S. 5A-11(1). The Court finds that, as a result of the aforesaid solicitation and encouragement from Attorney Paul, Angelo Barnes did in fact stand up in open court to protest and object to the trial Court's rulings and that this conduct did in fact disrupt and interrupt the trial proceedings.

Based on these findings of fact, the trial court found respondent Paul guilty of criminal contempt beyond a reasonable doubt and ordered him confined to Wake County jail for a period of thirty days for such contempt.

Following the entry of judgment in the contempt proceeding, the trial judge conducted a hearing to determine whether respondent Paul should be disbarred for his actions. Following the introduction of documentary evidence and arguments of counsel, the trial court made findings of fact and conclusions of law. The court ordered that respondent Paul be disbarred from the practice of law in the State of North Carolina and that he shall not practice law in this State until and unless his license may be restored pursuant to the reinstatement procedures of the North Carolina State Bar.

From the orders adjudging respondent Paul to be guilty of criminal contempt and disbarring him from the practice of law in North Carolina, respondent Paul appealed.

*Attorney General Lacy H. Thornburg, by Assistant Attorney General Christopher P. Brewer and Assistant Attorney General Charles H. Hobgood, for the State.*

*Max D. Stern, G. Henry Temple, Jr., and Wayne Eads, for respondent, appellant.*

HEDRICK, Chief Judge.

[1] Respondent first contends the trial court erred in denying his motions to dismiss because the evidence was insufficient to sustain a verdict of guilty of criminal contempt. Respondent argues that the only evidence that he committed the offense charged was the testimony of Percy Moorman, his former client, and that his testimony is "inherently unreliable" to support a conviction for contempt arising out of respondent's conduct in this trial. We disagree.

In a proceeding for contempt pursuant to G.S. 5A-15, the judge is the trier of fact. G.S. 5A-15(d). When a trial judge sits as "both judge and juror" in a non-jury proceeding, it is that judge's duty to weigh and consider all competent evidence, and pass upon the credibility of witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom. *In re Whisnant*, 71 N.C. App. 439, 322 S.E. 2d 434 (1984). The general rule in North Carolina is that the testimony of a single witness will support a verdict of guilty; the only exceptions to this rule involve prosecutions for perjury, treason and abduction of a married woman. *State v. Vehaun*, 34 N.C. App. 700, 239 S.E. 2d 705 (1977), *disc. rev. denied*, 294 N.C. 445, 241 S.E. 2d 846 (1978).

Although much of the evidence at the hearing in the present case, tending to show that respondent solicited Barnes to disrupt the Moorman trial, was Moorman's testimony, other witnesses corroborated his testimony. Moorman testified that on the morning of Angelo Barnes' courtroom outburst, respondent and Barnes discussed a "protest" on the "racial aspect of my case or the unfairness" in the car on the way to court. He further testified that respondent asked Barnes, "you know what you are going to do?"

and when Barnes replied affirmatively, respondent stated, "Just pick an appropriate time to protest." Moorman also testified that following Barnes' statements to the judge in open court, respondent said to him, "I think they got that." Dorothy Moorman testified that Golden Frinks, a friend of respondent, had told her prior to the outburst "what was going to happen," and that he approached her after the incident and asked her for "ten dollars to take to the Barnes fellow because he helped us out." Thomas Adams, who was in the Wake County jail while Barnes was serving his sentence for contempt of court, testified that Barnes told him that respondent knew what he was going to do in the courtroom because they had discussed it on the way to court that morning. George Rogister, the attorney Moorman hired to file a motion for a new trial, testified that Dorothy Moorman had told him that Golden Frinks and respondent planned "that whole incident with the man who stood up" and that when he asked Moorman about the incident, he told him about the conversation in the car. This evidence is clearly sufficient to support the trial judge's finding that respondent solicited Barnes to disrupt the trial, thereby committing willful behavior during the sitting of a court which tended to interrupt its proceedings, in violation of G.S. 5A-11(a).

[2] Respondent next contends the trial court erred by denying respondent's motion to dismiss and request for a bill of particulars. Respondent alleged in his motion and argues on appeal that the show cause order did not give him notice of the conduct which allegedly supports the charge of contempt. Respondent contends that the State's evidence at the hearing tended to show that he conspired with Golden Frinks to solicit Angelo Barnes to disrupt the trial and that he was found guilty of conspiracy with Frinks, although he was not given notice of this charge in the show cause order. Respondent's contentions are without merit.

The principles of due process require that before an attorney is finally adjudicated in contempt and sentenced after a trial for conduct during the trial, "he should have reasonable notice of the specific charges and opportunity to be heard in his own behalf." *In re Paul,* 28 N.C. App. 610, 614, 222 S.E. 2d 479, 482, *disc. rev. denied and appeal dismissed,* 289 N.C. 614, 223 S.E. 2d 767 (1976). (Citations omitted.) The show cause order in the present case contained a transcript of Angelo Barnes' statements in open court

and stated that according to the sworn testimony of Percy Moorman the following conversation occurred in the car on the way to court the morning of the incident:

> Barnes was advised by Paul that there was a need to protest the unfairness and prejudice of the trial against Attorney Paul and Moorman and that Paul wanted Barnes to stand up during the trial and protest the Court's rulings so that the news media would publicize this protest and focus on the prejudice. Barnes agreed and was advised by Paul that he would probably be put in jail for contempt by Judge Bailey. According to this testimony, Paul instructed Barnes to pick a time when Judge Bailey had sustained objections by Prosecutor Hart to questions asked by Paul of a witness.

The order further alleged that respondent had "solicited Angelo Barnes to engage in an intentional act of protest in open court as described above for the purpose of disrupting the trial proceedings and that by doing so Attorney Jerome Paul is himself guilty of contempt of court."

In the order entered 9 August 1985, the trial court found respondent guilty of criminal contempt upon its finding that respondent "did solicit, encourage and cause" Angelo Barnes to disrupt court, as charged in the show cause order. Although the State introduced evidence tending to show that respondent and Golden Frinks conspired to solicit Angelo Barnes to interrupt court, respondent was not found guilty of this conduct. We hold, therefore, that the show cause order was clearly sufficient to give respondent notice of the conduct alleged to be contemptuous.

[3] Respondent next contends the trial court erred in admitting into evidence testimony that respondent violated a court order by making certain public statements. Respondent argues that this evidence was inadmissible pursuant to G.S. 8C-1, Rule 404, because it was evidence of another wrong or act offered to prove his character and to show that he was more likely to have committed the act charged in the present case. Respondent further argues that any probative value of the evidence is outweighed by its prejudicial effect and that it should have been excluded pursuant to G.S. 8C-1, Rule 403. We disagree.

G.S. 8C-1, Rule 404(b) provides as follows:

(b) *Other crimes, wrongs, or acts.* — Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake, entrapment, or accident.

This rule is consistent with North Carolina practice prior to its enactment. *State v. DeLeonardo*, 315 N.C. 762, 340 S.E. 2d 350 (1986). Evidence of a defendant's attendance at prior meetings and his conduct at such meetings has been held admissible to show motive and intent, even though such evidence may disclose the commission of another offense. *State v. Grant*, 19 N.C. App. 401, 199 S.E. 2d 14, *cert. denied and appeal dismissed*, 284 N.C. 256, 200 S.E. 2d 656 (1973).

At the hearing in the present case, Moorman testified that respondent spoke about his case at a rally in Danville, Virginia "to raise money and just get the people involved in my case, let them know it was racially motivated." Moorman further testified that in his speech, respondent said "that 'if we let this young man go down slowly' that a lot of other black athletes would be in a lot of trouble and that all a white girl would have to say is 'rape.'" Moorman also testified that respondent told him that he was under a "gag order," but that "he was going to say it anyway." This evidence is relevant to show respondent's motive and intent to make the public aware of his belief that the prosecution of Moorman was racially motivated, even if to do so would violate a court order. The trial court, therefore, properly admitted this evidence pursuant to G.S. 8C-1, Rule 404(b). Also, respondent has failed to demonstrate that the trial court erred in refusing to exclude this evidence pursuant to G.S. 8C-1, Rule 403. In a trial before a judge without a jury, it is presumed that the judge disregarded any incompetent evidence and did not draw inferences from testimony otherwise competent which would render such testimony incompetent. *Bowen v. Bowen*, 19 N.C. App. 710, 200 S.E. 2d 214 (1973).

[4] By his next assignment of error, respondent contends the trial court improperly relied upon the evidence relating to the contents of the statements made in Danville. Respondent argues

the trial court "explicitly" based the conviction of contempt upon the evidence of these statements in violation of G.S. 5A-11(b), which provides, in pertinent part, that no person may be held in criminal contempt of court "on the basis of the content of any broadcast, publication, or other communication. . . ." Respondent also argues that the trial court's reliance on this evidence is error because his statements "constituted lawful protest protected by the First Amendment as there was no evidence of a lawful valid and applicable court order restraining his speech."

At the close of the evidence in the present case, the trial judge explained his decision and stated that he had considered the evidence concerning the Danville statements for the purpose of weighing the credibility of respondent's assertions that he had not solicited Barnes' outburst because he [respondent] felt that the case did not warrant a public protest or demonstration. The judgment clearly discloses that the trial judge based the finding of contempt upon his findings that respondent "did solicit, encourage and cause" Angelo Barnes to disrupt the Moorman trial. Thus it appears that the trial judge properly considered the evidence of respondent's statements in Danville as relevant only to the issue of motive or intent and did not base his finding of contempt on this evidence in violation of G.S. 5A-11(b) or respondent's constitutional rights. The judgment finding respondent Paul in contempt will be affirmed.

[5] With reference to the judgment of disbarment, respondent first contends the trial court erred in entering a judgment of disbarment because "[t]he facts underlying this conviction of criminal contempt are insufficient as a matter of law to sustain a disciplinary order of disbarment." In the judgment of disbarment, the trial court made the following findings of fact:

2. That Jerome Paul was convicted by this Court on this date of the offense of criminal contempt and was sentenced to 30 days confinement, a copy of which judgment is attached.

. . . .

5. The offense for which Attorney Paul has been convicted directly involved his practice as an attorney and di-

rectly reflected upon his fitness to engage in the profession of attorney and counselor at law.

6. Attorney Paul's conduct is such as to demean and bring into disrepute and disgrace the practice and profession of an attorney and to bring contempt upon the administration of justice.

7. Attorney Paul has been previously held in contempt for similar misconduct in 1975 [IN RE PAUL, 28 NC App 610 (1976)] and has twice been disciplined by the suspension of his license to practice law by the North Carolina State Bar for serious attorney misconduct; however, he still does not appear to appreciate the necessity of complying with the rules and conduct expected of attorneys licensed by the State of North Carolina and willfully refuses to do so.

8. The Courtroom is not a public hall for the expression of views, nor a political arena or a street. It is a place for the trial of cases on their merits in accordance with rules of law and standards of demeanor and conduct for judges, jurors, parties, witnesses, spectators and counsel. (IN RE PAUL, 28 NC App at 619). Attorney Paul by his conduct refuses to accept that basic principle of his profession.

In his brief, respondent does not challenge the findings of fact upon which the judgment of disbarment was based, but argues that those findings do not support the order disbarring him. We do not agree.

In North Carolina attorneys may be disciplined by two methods — statutory and judicial. *In re Burton*, 257 N.C. 534, 126 S.E. 2d 581 (1962). The judicial method is not dependent upon statutory authority, but arises because of a court's inherent authority to take disciplinary action against attorneys licensed to practice before it. *In re Bonding Co.*, 16 N.C. App. 272, 192 S.E. 2d 331, *cert. denied and appeal dismissed*, 282 N.C. 426, 192 S.E. 2d 837 (1972); G.S. 84-36. Judicial disciplinary action may take the form of an order of disbarment or suspension of the attorney's privilege to practice law. *In re Hunoval*, 294 N.C. 740, 247 S.E. 2d 230 (1977). Unprofessional conduct subject to this power includes "misconduct, malpractice, or deficiency in character" and "any dereliction of duty except mere negligence or mismanagement."

*Id.* at 744, 247 S.E. 2d at 233. (Citations omitted.) This power to discipline or disbar attorneys is essential in order that the court may protect itself from fraud and impropriety and to serve the administration of justice. *Swenson v. Thibaut*, 39 N.C. App. 77, 250 S.E. 2d 279 (1978), *disc. rev. denied and appeal dismissed*, 296 N.C. 740, 254 S.E. 2d 181 (1979). An order of disbarment is not a punishment of the attorney disbarred but is a protection to the public against an unworthy practitioner. *State v. Spivey*, 213 N.C. 45, 195 S.E. 1 (1938).

We hold that the findings of fact support the conclusions of law and the order disbarring respondent, and affirm the order from which this appeal was taken. It is true, as respondent contends, that his conduct does not amount to a felony, but it is not true, as respondent contends, that his conduct would not support an order of disbarment. Respondent was convicted of contempt for soliciting someone to disrupt a criminal trial in which he, respondent, represented the defendant. This conduct clearly rises to the level of misconduct or a dereliction of duty other than mere negligence or mismanagement. The order of the trial court disbarring respondent was a proper exercise of its inherent authority to discipline attorneys and was necessary to protect the court and the public from an unworthy practitioner.

**[6]** Respondent further contends the judgment of disbarment must be reversed because the trial court improperly relied upon evidence of respondent's statements in Danville. Respondent again argues that the trial court penalized him "for exercising his First Amendment rights" and that the show cause order did not notify him that he could be disbarred for such conduct. Although the trial judge indicated that he disapproved of respondent's conduct in Danville, he did not make any findings of fact in the judgment of disbarment relating to this conduct. All of the findings of fact relate to the judgment of contempt for respondent's solicitation of Angelo Barnes to disrupt Moorman's trial. As we stated above, these findings support the judgment entered. Respondent was not disbarred for making public statements in Danville, as he contends. The judgment of disbarment is proper and will be affirmed.

Finally, respondent contends the trial court erred in ordering that respondent not practice law during the pendency of the ap-

peal of his conviction for criminal contempt. G.S. 15A-536 provides that the trial court may release a defendant, pending appeal, and may impose restrictions on the defendant. The terms of the release are within the discretion of the court. *State v. Crabtree*, 66 N.C. App. 662, 312 S.E. 2d 219 (1984). We find no abuse of discretion in the restrictions imposed in the present case.

The judgments appealed from are affirmed.

Affirmed.

Judges ARNOLD and WELLS concur.