DILLON, Judge.
*566 Lynn Andrews ("Attorney Andrews")-who was retained by Carole Cranor in this incompetency proceeding-appeals from an *381 order entered 12 September 2014 (the "September Order") in which the trial court imposed judicial discipline on her, pursuant to Rule 11 and its inherent authority, and ordered her to pay attorneys' fees to the Petitioner Frank Cranor and his attorney ("Attorney West"). Attorney Andrews also appeals two subsequent orders entered 17 December 2014 (the "December Orders") in which the trial court set the amount of the attorneys' fee award and denied Attorney Andrews' Rule 60 motion for relief from the September Order.
I. Background
This matter involves an incompetency proceeding commenced by Frank Cranor to have his sister Carole Cranor declared incompetent and to have him appointed as her general guardian. Carole Cranor is a retired pharmacist residing in Durham who was diagnosed with early onset dementia. At the time of her diagnosis, Carole and her brother Frank Cranor were not close. There is evidence that they had a contentious relationship due to a past disagreement concerning the care of their mother and that they had very little contact with each other.
Carole Cranor consulted her long-time, close attorney-friend, Harriet Hopkins ("Ms. Hopkins"), for help in choosing a long-term care facility and in getting her legal and financial affairs in order. Carole *567 Cranor also appointed Ms. Hopkins as her attorney-in-fact via a durable power of attorney ("DPOA") that Ms. Hopkins drafted. The DPOA that Ms. Hopkins drafted contained a gifting provision which allowed Ms. Hopkins to make gifts to herself from Carole Cranor's estate. However, there is no evidence that Ms. Hopkins ever made any such gifts, and the DPOA was subsequently replaced by another DPOA drafted by an independent attorney.
Frank Cranor, who resides in Arkansas, learned of his sister's deteriorating condition and became aware that Ms. Hopkins was acting as Carole's attorney-in-fact. On 3 June 2013, Frank Cranor filed the petition to have his sister Carole adjudicated incompetent and requested that he be appointed as her general guardian, citing a concern that his sister was being taken advantage of by Ms. Hopkins.
On 8 June 2013, Carole Cranor hired Attorney Andrews to represent her in the incompetency proceeding.[1]
After a period of litigation, which included discovery and a series of motions, Attorney Andrews was successful in obtaining a Rule 12(b)(6) dismissal of Frank Cranor's incompetency petition. This appeal, however, is unrelated to the dismissal or the issue of Carole Cranor's competency. Rather, this appeal arises from orders entered after the dismissal of the incompetency petition.
Following the dismissal, Attorney Andrews filed motions seeking attorneys' fees, costs, and sanctions against Frank Cranor and Attorney West. In these motions, Attorney Andrews alleged that Frank Cranor's incompetency petition did not contain justiciable issues of fact or law, and thus was non-justiciable. In response, Frank Cranor and Attorney West filed motions for attorneys' fees, costs, and Rule 11 sanctions against Attorney Andrews, contending that Attorney Andrews' motions for fees, costs, and sanctions were filed in violation of Rule 11 because they were not well grounded in fact and were filed for the purpose of harassing Frank Cranor and Attorney West.
The clerk denied all motions. Specifically, the clerk determined that Frank Cranor's incompetency petition was justiciable and that Attorney *568 Andrews had acted in good faith in seeking fees, costs, and sanctions.[2] ALL PARTIES APPEALed to superior court.
Following a hearing on the matter, the superior court entered its September Order *382 denying Attorney Andrews' motions but allowing Attorney West's motion for sanctions against Attorney Andrews. Specifically, in allowing Attorney West's motions, the court ordered that (1) Attorney Andrews be prohibited from accepting any fees or expenses from Carole Cranor; (2) Attorney Andrews be removed as attorney for Carole Cranor and be barred from representing her in any action or proceeding in any court in the State of North Carolina; and (3) Attorney Andrews pay the attorneys' fees and costs of Frank Cranor and Attorney West incurred in defending against Attorney Andrews' motions for fees, costs and sanctions, with the amount of the award to be determined in a future hearing.[3]
In December 2014, the superior court entered its December Orders in which it denied Attorney Andrews' Rule 60(b) motion for relief from the September Order and set the amount of attorneys' fees and costs awarded in the September Order at $122,987.72. In January 2015, Attorney Andrews filed her notice of appeal to this Court from the September Order and from both December Orders.
II. Jurisdiction
As a preliminary matter, we address Frank Cranor's contention that this Court lacks jurisdiction to consider Attorney Andrews' arguments concerning the September Order. Specifically, Frank Cranor contends that the September Order was a final order (notwithstanding the later December Orders) and that Attorney Andrews failed to file her notice of appeal from that order within the thirty (30) day period prescribed by Rule 3 of the North Carolina Rules of Civil Procedure. See N.C. R.App. P. 3(c)(1) ; N.C. R. Civ. P. 58. We disagree, and hold that we have jurisdiction to consider Ms. Andrews' arguments regarding the September Order.
Frank Cranor's argument turns on whether the September Order was a "final" order, notwithstanding the subsequent December Orders. Our Supreme Court has held that "[a]n order that completely decides *569 the merits of an action [ ] constitutes a final judgment for purposes of appeal even when the trial court reserves for later determination collateral issues such as attorney's fees and costs." Duncan v. Duncan, 366 N.C. 544, 546, 742 S.E.2d 799, 801 (2013).
The gist of Frank Cranor's argument is that the December Orders dealt only with collateral matters and, therefore, did not affect the status of the September Order as being a "final" order. However, we note that the September Order, itself, did not decide any substantive issue concerning Carole Cranor's competency, but rather only dealt with "collateral issues," including an award of attorneys' fees. See Bryson v. Sullivan, 330 N.C. 644, 653, 412 S.E.2d 327, 331 (1992) (noting that sanctions are collateral issues that "require consideration after the action has been terminated"). Where an order imposes judicial discipline, an appeal from such order is interlocutory if the order involves the imposition of attorneys' fees and if the amount of the fee award was not set in the order. See, e.g., Sanders v. State Pers. Comm'n, 236 N.C.App. 94, 99, 762 S.E.2d 850, 854 (2014) (stating that "an appeal of the [ ] issue of attorney fees, itself, is interlocutory if the trial court has not set the amount to be awarded").
Because the September Order was an order for attorneys' fees which did not set the amount of the fee award, instead leaving the issue for later determination, it was not a final order. Rather, the December Order, which did set the amount of the attorneys' fees, was the final order. Thus, since Attorney Andrews noticed her appeal from the December Orders within the time allowed by our Rules, we reject Frank Cranor's argument concerning our jurisdiction and address the merits of Attorney Andrews' appeal.
III. Analysis
A. Rule 11 Sanctions
We first review the superior court's award based on Rule 11. N.C. Gen.Stat. § 1A-1, Rule 11 (2014). Our Supreme Court *383 has held that a trial court's decision to impose sanctions under Rule 11 "is reviewable de novo as a legal issue." Turner v. Duke Univ., 325 N.C. 152, 165, 381 S.E.2d 706, 714 (1989). That is not to say that the reviewing court reweighs the evidence and makes new factual findings. Rather, the Supreme Court instructs that "[i]n the de novo review, the appellate court will determine (1) whether the trial court's conclusions of law support its judgment or determination, (2) whether the trial court's conclusions of law are supported by its findings of fact, and (3) whether the findings of fact *570 are supported by a sufficiency of the evidence." Id. The Supreme Court further instructs that if the appellate court makes these determinations in the affirmative, "it must uphold the trial court's decision to impose or deny the imposition of mandatory sanctions under [ Rule 11 ]." Id. The trial court's decision concerning the type of sanction(s) to impose, however, is reviewed for an abuse of discretion. Id.
Based on our review, we hold that Rule 11 sanctions against Attorney Andrews were not warranted in this case.
First, many of the superior court's findings are not supported by the evidence. For instance, the court found that Attorney Andrews "has repeatedly argued to [the superior court] that because [Frank Cranor] refused to consent to a limited guardianship with Harriet Hopkins as the guardian, that he was seeking to take away all of [Carole Cranor's] rights. This argument is a misrepresentation of the facts and the law." However, in his petition, Frank Cranor specifically stated that he was seeking to be named his sister's general guardian, which would legally allow him great control over Carole's life. Such relief, if granted, would have deprived Carole of her authority to choose Ms. Hopkins as her guardian or attorney-in-fact. Throughout the litigation, the record shows that Mr. Cranor persisted in objecting to Ms. Hopkins acting as Carole's attorney-in-fact. Therefore, we hold that this finding is without evidentiary support.
The superior court also found that Attorney Andrews admitted that her client Carole Cranor was incompetent, which would tend to show that Attorney Andrews recognized the justiciability of Frank Cranor's petition. However, the record clearly shows that Attorney Andrews conceded only that her client had limited capacity related to "early stage dementia," maintaining that Carole was otherwise competent to make decisions concerning her own affairs, including the decision to name her attorney-in-fact.[4] Therefore, we hold that this finding is also without evidentiary support.
Further, the superior court found that Attorney Andrews continued to insist during the proceeding that there was no evidence of wrongdoing by Carole's attorney-in-fact, Ms. Hopkins. It is true that Ms. Hopkins' drafting of a DPOA, which contained a gifting provision in her favor, may have constituted unethical conduct. However, the record does not disclose that Attorney Andrews ever contested this point or made any *571 misrepresentation concerning this point. Rather, Attorney Andrews' statements on this issue are supported by another finding by the superior court-which is supported by the evidence-that although Ms. Hopkins had violated the Professional Rules of Conduct in drafting the gifting provision in her favor, "[t]here is no evidence that Ms. Hopkins ever received anything of value or otherwise benefitted from the DPOA."
The superior court's concern seemingly was that Attorney Andrews was acting for the benefit of Ms. Hopkins and not for the benefit of her client, Carole Cranor. It is true that Attorney Andrews' advocacy in this matter had the potential of benefiting Ms. Hopkins by allowing her to continue serving as Carole's attorney-in-fact and/or as a limited guardian appointed by the court. However, Attorney Andrews' advocacy benefited her client as well, in that she was acting in accordance to Carole's wishes: that Ms. Hopkins, in whom she had great trust, remain in charge of her affairs during her decline and that her brother, with whom she had a *384 strained relationship, would have no authority over the running of her affairs.
We hold that the evidence in the record and the superior court's findings which are supported by the evidence support a conclusion that Rule 11 sanctions are not warranted in this case, as found by the clerk in the initial hearing on the matter. We agree with the determination by the clerk that the petition filed by Frank Cranor was justiciable and that Attorney Andrews' motions were properly denied. However, we also conclude that Attorney Andrews acted in good faith and in the interest of zealously advocating for her client. We therefore agree with the clerk that "remarks and pleadings made and filed by [Attorney Andrews] in this matter were made in apparent good faith and do not rise to a level of culpability sufficient to justify imposition of sanctions pursuant to [ Rule 11 ] nor to trigger payment of costs."
Specifically, Attorney Andrews could reasonably have inferred from Frank Cranor's original and amended petitions for adjudication of Carole Cranor's incompetence that Frank Cranor was attempting to gain control over his sister's assets by having her declared incompetent and having himself named as her general guardian, and that the petitions were filed without a proper basis in fact. The petition was eventually dismissed for failure to state a claim.[5] Frank Cranor represented in his *572 petition that he had first-hand knowledge of Carole's condition though there is evidence that he had no first-hand knowledge of her condition, in that he had had very little contact with her for many years.
Further, Attorney Andrews could reasonably have inferred that Frank Cranor was not proceeding in good faith, based in part on his attempt to have Carole evaluated by his chosen psychiatrist without notifying Attorney Andrews. Specifically, on the morning of 8 June 2013, Attorney Andrews e-mailed Attorney West that she had been retained by Carole and that she objected to any evaluation of her client that day by Frank Cranor's chosen psychiatrist. However, whether Attorney West was aware of Attorney Andrews' e-mail or not, Attorney West appeared at Carole's residential care facility later that same day along with the psychiatrist for the purpose of performing an exam on Carole.
Finally, based on overwhelming evidence that Carole Cranor still retained significant capacity, Attorney Andrews could have reasonably concluded that Frank Cranor pursued his appeal of the clerk's dismissal of his amended petition after a point where he should reasonably have become aware that the pleading no longer contained a justiciable issue. Sunamerica, 328 N.C. at 258, 400 S.E.2d at 438 ; see also Bryson v. Sullivan, 330 N.C. 644, 658, 412 S.E.2d 327, 334 (1992) ("[O]nce the case has become meritless, failure to dismiss or further prosecution of the action may result in sanctions [under Rule 11 ] or pursuant to the inherent power of the court."). Thus, we do not believe that the trial court's finding that "the record ... clearly establishes the justiciability of the issues presented by the petition" supports the trial court's conclusion of law that "no reasonably competent attorney could conclude that the issues brought by [Frank Cranor] are non-justiciable in this proceeding."
Again, we do not take a position regarding Attorney Andrews' beliefs about the motivation of Frank Cranor and Attorney West in filing the petition or in prosecuting this matter. Indeed, Carole was suffering from dementia, and there was a concern regarding the initial DPOA which contained the self-gifting provision in favor of Ms. Hopkins. We simply conclude that the unchallenged findings and uncontroverted evidence in the record supports a conclusion that Attorney Andrews acted in good faith in filing the Rule 11 motion and the motion for attorneys' fees. Accordingly, we hold that the superior court erred in imposing sanctions on Attorney Andrews in response to both motions.
B. Sanctions Imposed in the Trial Court's Inherent Authority
In addition to the imposition of sanctions pursuant to Rule 11, the superior court *385 imposed sanctions against Attorney Andrews in *573 the exercise of its inherent authority. These sanctions included (1) prohibiting Attorney Andrews from collecting any fees or expenses from Carole Cranor, and (2) removing Attorney Andrews as Carole Cranor's attorney. The proper standard of review for acts by the trial court in the exercise of its inherent authority is abuse of discretion. In re Key, 182 N.C.App. 714, 721, 643 S.E.2d 452, 457 (2007).
The superior court prohibited Attorney Andrews from collecting fees or expenses from Carole Cranor pursuant to the provisions of Indigent Defense Services ("IDS") Rule 1.9(e), which governs the appointment of counsel to indigent clients and also applies to guardian ad litem appointments in certain situations. This was improper and constitutes an abuse of discretion. IDS Rule 1.9(e) addresses a situation where an attorney is appointed as counsel for an indigent client, withdraws, and then becomes privately retained as counsel for the same client. See Commentary to IDS Rule 1.9(e) (2014). That situation is markedly different from the facts of this case, where Ms. Andrews was appointed as Ms. Cranor's guardian ad litem and where the record clearly shows that Ms. Cranor was not indigent. IDS Rule 1.9(e) clearly does not apply in the present situation.
Additionally, we do not believe the record supports the trial court's removal of Attorney Andrews as counsel for Carole Cranor in this matter, or its order preventing Carole Cranor from retaining Attorney Andrews in any future matter.[6] As previously discussed, many of the findings used by the trial court to support its conclusions were not supported by the evidence in the record. We do not believe that the undisturbed findings of the trial court support this sanction.
IV. Conclusion
In conclusion, we reverse the September Order and December Orders to the extent that they impose sanctions on Attorney Andrews pursuant to Rule 11 and the trial court's inherent authority, including the imposition of attorneys' fees and costs. Furthermore, we reverse the September Order to the extent that it orders that the cost of the multidisciplinary evaluation of Carole Cranor be borne by the Department of Health and Human Services and reinstate the order of the clerk requiring that Frank Cranor bear the cost. See N.C. Gen.Stat. § 35A-1116(b)(3) (requiring that when a respondent is not adjudicated incompetent, the *574 cost of a multidisciplinary evaluation may be taxed against either party in the court's discretion).[7] These Orders are otherwise affirmed.
AFFIRMED IN PART AND REVERSED IN PART.
Judge ZACHARY concurs.
Judge HUNTER, JR., concurs in part and dissents in part by separate opinion.

The clerk had appointed Attorney Andrews to serve as Carole Cranor's guardian ad litem on 3 June, the day Frank Cranor filed his petition. However, Attorney Andrews promptly withdrew, citing a conflict of interest, based on a previous discussion she had had with Ms. Hopkins regarding Carole Cranor's situation. When Attorney Andrews was hired by Carole Cranor directly, Frank Cranor petitioned to have her disqualified; however, his motion was denied.

The Clerk did order Frank Cranor to pay the costs of a multidisciplinary evaluation of Carole Cranor ordered by the court that he sought as part of the incompetency proceeding.

The trial court also requested that the State Bar open an investigation into Attorney Andrews' conduct in its September Order.

Although not central to our analysis, we note that the evidence produced during discovery clearly suggested that Carole did have substantial capacity and was not totally incompetent.

We note that while the grant of a 12(b)(6) motion is not sufficient to establish the absence of a justiciable issue, it can serve as evidence of the absence of a justiciable issue. Sunamerica Fin. Corp. v. Bonham, 328 N.C. 254, 259, 400 S.E.2d 435, 439 (1991).

It is not within the trial court's inherent authority to place a limitation on a lawyer's right to practice law for an indefinite period of time. See Matter of Hunoval, 294 N.C. 740, 744, 247 S.E.2d 230, 233 (1977).

Whether to tax the cost of the evaluation to Frank Cranor pursuant to N.C. Gen.Stat. § 35A-1116(b)(3) was within the discretion of the clerk. Here, since the superior court did not reverse the dismissal of the incompetency petition, the superior court's review of the clerk's order taxing costs of the evaluation was for an abuse of discretion. There is nothing in the record which would support a conclusion that the clerk abused its discretion in taxing the costs of the evaluation to Frank Cranor.